IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

YVONNE MACIAS,

    Plaintiff,

v().    No. Civ. 12-350 LH/WPL

SOUTHWEST CHEESE COMPANY, L.L.C.,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

On April 5, 2012, Defendant Southwest Cheese Company, L.L.C., ("Defendant") filed a "Motion to Dismiss Pursuant to F.R.Civ.P. 12(b)(6) and Supporting Brief" (Doc. 3). Plaintiff Yvonne Macias ("Plaintiff") subsequently filed a response (Doc. 5) opposing the motion and a First Amended Civil Complaint (Doc. 8). The Court, having considered the pleadings, motion, briefs, applicable law, and otherwise being fully advised, concludes that Defendant's motion should be granted in part and denied in part. The Court will dismiss Plaintiff's racial discrimination claim brought under 42 U.S.C. § 1981 for failure to state a claim, but in all other respects will deny Defendant's motion.

    **I.**    **FACTUAL BACKGROUND**

Plaintiff Yvonne Macias is a Hispanic woman. (Am. Compl. (Doc. 8) ¶ 50.) According to Plaintiff's complaint, in February 2009, she began working at Southwest Cheese Company as a temporary employee. *(Id.* ¶ 8.) Plaintiff became a non-probationary full time employee in September 2010. *(Id.* ¶ 9.) In or around June 2009, Cody Stewart, an assistant team leader, pulled down his pants and exposed his genitals to Plaintiff while working. *(Id.* ¶ 11.) Stewart was transferred but not punished by Defendant and Plaintiff remained afraid of Stewart throughout her

employment. (*Id.*)

Plaintiff also alleges that her team supervisor, Jose Brojas, continuously called her into his office for no reason. (*Id.* ¶ 12.) Further, Brojas would stare at Plaintiff and get uncomfortably close to Plaintiff on a frequent and continuous basis. (*Id.*) Brojas also made Plaintiff's job miserable because "she did not accept his repeated and continuous sexual advances." (*Id.*) Plaintiff requested to be transferred from the day shift to avoid Borjas but Defendant did not act on her request. (*Id.*) Plaintiff did not complain further because one other worker who did complain was fired, so Plaintiff believed it would be futile and she was afraid of being fired. (*See id.*) Plaintiff also alleges that Defendant had actual and constructive knowledge of the conduct of its supervisors at all relevant times. (*Id.* ¶ 18.)

Plaintiff was fired in February 2011. (*Id.* ¶ 13.) Defendant claimed that she was being fired for failing to mix cultures into a mix, but Plaintiff claims she was terminated in retaliation for not accepting Brojas's sexual advances. (*Id.*) Plaintiff alleges that other employees who had made this same mistake were not terminated. (*Id.*)

## II.    PROCEDURAL HISTORY

On June 30, 2011, Plaintiff Macias filed an administrative complaint with the New Mexico Department of Workforce Solutions, Human Resources Bureau. (Am. Compl. (Doc. 8) at 2.) She filed an amended administrative complaint on July 11, 2011. (*Id.*) The amended administrative complaint alleges that the earliest date discrimination occurred was on February 23, 2009, and the latest date was January 6, 2011. (Notice of Removal, Ex. A (Doc. 1-1) at 4 of 6.)

Plaintiff filed her complaint in state court on February 27, 2012. In the complaint, entitled "Notice of Appeal Pursuant to § 28-1-13 NMSA 1978 From 'Order of Non-Determination' Issued February 21st, 2012 by the New Mexico Human Rights Bureau," she alleged claims for gender

discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*.; 42 U.S.C. § 1981; and the New Mexico Human Rights Act ("NMHRA"), N.M. Stat. Ann. § 28-1-7.  (Notice of Removal, Ex. A (Doc. 1-1) at 2 of 6.).  Defendant then filed a timely Notice of Removal (Doc. 1) from state court on April 5, 2012, and filed a Motion to Dismiss that same day (Doc. 3).

Defendant's Motion to Dismiss requests dismissal for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Defendant notes that Plaintiff Macias asserted in her complaint that she filed a charge of discrimination and an amended charge, but she neglected to attach her affidavit that accompanied the amended charge.  Defendant thus argues that Plaintiff's complaint is entirely conclusory and alleges insufficient facts to sustain a cause of action.

On April 16, 2012, Plaintiff Macias filed a Response to the Motion to Dismiss and acknowledged that Plaintiff had inadvertently failed to attach the critical affidavit to the Complaint. (Resp. (Doc. 5) at 3.)  Subsequently, Plaintiff filed a First Amended Complaint on April 18, 2012, that included the factual allegations from Plaintiff Macias's affidavit.  (*Compare* Am. Compl. (Doc. 8) at 3-5, *with* Aff. of Yvonne Macias (Doc. 5-1) at 1-2.)  In addition to re-asserting the same federal causes of action, Plaintiff Macias added the state law claims of breach of contract, intentional infliction of emotional distress, and negligent supervision. (Am. Compl. (Doc. 8) at 9-15.)  Plaintiff then filed an Amended Response (Doc. 9) to the Motion to Dismiss on April 19, 2012, incorporating the allegations from the Amended Complaint.

Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure provides that a party may amend its pleading once as a matter of course within "21 days after service of a motion under 12(b)."  Fed. Civ. P. 15(a)(1)(B).  Plaintiff filed its First Amended Complaint within 21 days after service of Defendant's 12(b)(6) motion, thus the First Amended Complaint is properly before the Court.  *See*

Fed. R. Civ. P. 15 advisory committee note (2009 Amendments) ("[T]he right to amend once as a matter of course terminates 21 days after service of a motion under Rule 12(b) . . . . This provision will force the pleader to consider carefully and promptly the wisdom of amending to meet the arguments in the motion.").

Defendant filed an Answer to the Amended Complaint on May 2, 2012, refuting the claims and reasserting the defense that Plaintiff failed to state a claim upon which relief can be granted. (Answer (Doc. 12) at 4.) Defendant subsequently filed a Reply on May 3, 2012, stating that even if the missing affidavit to Plaintiff's initial complaint were treated as an allegation of the initial complaint, Plaintiff has failed to state a claim upon which relief can be granted. (Def.'s Reply (Doc. 14).) In the reply, Defendant argues only for dismissal of Plaintiff Macias's claims under the NMHRA, Title VII, and Section 1981. Other than noting that the state law claims were not set forth in the initial complaint, Defendant does not address or otherwise move to dismiss the state law claims.

### III.    STANDARD

The Court can dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Plaintiff's complaint must set forth factual allegations that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It is not enough for a plaintiff to just set forth labels, conclusions, and formulaic recitation of the elements of a cause of action. *Id.* "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir 2012).

When reviewing a plaintiff's complaint in ruling on a 12(b)(6) motion, the Court must accept

all well-pleaded allegations as true. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). The Court must view the allegations in the light most favorable to the plaintiff. *Id.* The Court "will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik*, 671 F.3d at 1191. This plausibility standard does not require evidence of probability, "but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV. ANALYSIS

### A. Hostile Work Environment Sexual Harassment

Plaintiff alleges that Defendant created a hostile work environment by subjecting her to sexual harassment in violation of the NMHRA and Title VII. (*See* Am. Compl. (Doc. 8) ¶¶ 14-28.) Title VII prohibits an employer from "discriminat[ing] against an individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's … sex." 42 U.S.C. § 2000e-2(a)(1). This statutory provision prohibits an employer from subjecting an employee to a hostile work environment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64-66 (1986). A female employee can claim sex discrimination based on a hostile work environment if she can show that she was discriminated against because of her gender and that the discrimination created an abusive environment and was severe enough to alter the conditions of her employment. *Morris v. City of Colo. Springs*, 666 F.3d 654, 663 (10th Cir. 2012).

Similarly, the NMHRA makes it unlawful for an employer to "refuse to hire, to discharge, to promote or demote or to discriminate in matters of compensation, terms, conditions or privileges of employment against any person otherwise qualified because of . . . sex . . . ." N.M. Stat. § 28-1-7 (1978). The New Mexico Supreme Court has held that a defendant creates a hostile work environment in violation of the NMHRA by engaging in offensive conduct that "has the purpose or

5

effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." *Ulibarri v. State of N.M. Corr. Acad.*, 2006-NMSC-009, ¶ 12, 139 N.M. 193, 131 P.3d 43 (quotation marks and citation omitted).

Both federal and New Mexico state courts employ the same standard under Title VII and the NMHRA in determining if harassment rendered a work environment hostile or abusive. The jury is directed to consider the totality of the circumstances and evaluate the severity of the harassment from the perspective of a reasonable person. *See Harsco Corp. v. Renner*, 475 F.3d 1179, 1187 (10th Cir. 2007); *Ulibarri*, 2006-NMSC-009, ¶ 12. Applicable factors include "the frequency of the conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Renner*, 475 F.3d at 1187.  *See also Ulibarri*, 2006-NMSC-009, ¶ 12.

In Defendant's Reply, Defendant argues that because a charge of discrimination must be filed with the agency within 300 days of the alleged discriminatory act, 42 U.S.C. § 2000e-5(e)(1), Plaintiff failed to exhaust her administrative remedies regarding the June 2009 exposure incident by waiting to file her Charge of Discrimination in June 2011.  (Def.'s Reply (Doc. 14) at 3.) Defendant describes the allegation that Stewart pulled down his pants and exposed himself to Plaintiff as a single act.  Defendant cites *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002), as support for its argument that administrative remedies must be exhausted regarding single isolated incidents as this.

For this case, *Morgan* is more instructive in that it distinguishes hostile work environment claims from single acts of harassment or discrimination. *Id.* at 115. ("Hostile work environment claims are different in kind from discrete acts.")  The Supreme Court held that, "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the

6

statutory time period, is permissible … so long as an act contributing to that hostile environment takes place within the statutory time period." *Id.* at 105. Additionally, plaintiffs are further allowed to use otherwise time-barred acts as background evidence in support of other, still timely, claims. *Id.* at 113. To determine whether certain allegedly unexhausted acts are part of the same hostile work environment as other exhausted acts, the court looks at whether the incidents involved "the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." *See Duncan v. Manager, Dept. of Safety, City and County of Denver*, 397 F.3d 1300, 1309 (quoting *Morgan*, 536 U.S. at 120.).

In this case, Defendant does not appear to contest that Plaintiff exhausted her administrative remedies regarding the other acts committed by Brojas that support her hostile work environment charge.[1] Consequently, in accordance with *Morgan*, so long as the June 2009 Stewart exposure incident constitutes a hostile act contributing to the hostile work environment, the Court may consider that incident.

In regard to this motion, however, a decision on the exhaustion issue is unnecessary as Plaintiff alleged other sufficient plausible claims for hostile work environment sexual harassment. Plaintiff alleges that Brojas continuously called her into his office for no reason. (Am. Compl. (Doc. 8) ¶12.) Plaintiff further alleges that Brojas would stare at her and get uncomfortably close to her on a frequent and continuous basis, and that Brojas made repeated and continuous sexual advances, which she rejected. *Id.* These claims alone are factual enough to state a plausible claim for hostile

---

[1] Although Plaintiff is not specific as to the exact dates of Brojas's alleged sexually discriminatory acts, she alleged in her amended charge of discrimination that the last act of discrimination occurred on January 6, 2011. (*See* Notice of Removal, Ex. A (Doc. 1-1) at 4 of 6.) That last act occurred within 300 days of the date Plaintiff filed her June 30, 2011 Charge of Discrimination.

work environment sexual harassment under NMHRA and Title VII to survive the motion to dismiss. *Cf. . Chavez v. New Mexico*, 397 F.3d 826, 833–36 (10th Cir. 2005) (finding sufficient evidence of a hostile work environment based upon sexual discrimination where there was evidence that the plaintiffs had been subjected both to a "number of gender-based incidents" occurring over a long period of time, including sexual propositions); *Chavez-Acosta v. Southwest Cheese Co., L.L.C.*, No. Civ. 12-353 JP/CEG, Mem. Op. and Order (Doc. 13) (D.N.M. Aug. 3, 2012) (concluding that similar allegations were sufficient to survive a motion to dismiss).

### B.     Quid Pro Quo Sexual Harassment and Retaliation

Under both the NMHRA and Title VII, Plaintiff claims Defendant subjected her to quid pro quo sexual harassment and retaliated against her by terminating her for rejecting her supervisor's unwanted sexual advances. (Am. Compl. (Doc. 8) ¶¶ 13, 17, 25.) Plaintiff alleges that she was fired in February 2011, after Plaintiff had requested a different shift in order to avoid her supervisor whose repeated and continuous sexual advances she had rejected. (*Id.* ¶¶ 12-13.)

Plaintiff's NMHRA retaliation claim requires a prima facia showing that "(1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between these two events." *Ulibarri*, 2006-NMSC-009, ¶ 16. These are the same standards the Tenth Circuit has applied to Title VII claims of retaliation. *See Khalik*, 671 F.3d at 1193. "The gravamen of a *quid pro quo* sexual harassment claim is that tangible job benefits are conditioned on an employee's submission to conduct of a sexual nature and that adverse job consequences result from the employee's refusal to submit to the conduct." *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1414 (10th Cir.1987).

Defendant argues that Plaintiff has alleged no facts that would make plausible claims for a prima facie case, but has only made conclusory statements. (Def.'s Mot. (Doc. 3) at 4.) In regard

to Plaintiff's claim that she was terminated for rejecting her supervisor's unwanted sexual advances, Defendant argues that Plaintiff has failed to describe any conduct that could be characterized as a sexual advance. (Def.'s Reply (Doc. 14) at 4.)

The Tenth Circuit has stated that an allegation of retaliation which does not include "any details whatsoever of events leading up to her termination, are insufficient to survive a motion to dismiss." *Khalik*, 671 F.3d at 1193. The Tenth Circuit, however, has not required a plaintiff to set forth a prima facie case for each element. *Id*. In regard to allegations of retaliation, the Tenth Circuit has held that when the plaintiff has failed to provide context of when she complained, or to whom she complained, or of similarly situated employees who were treated differently, or of a nexus between the person she complained to and the person who fired her, then there is "nothing other than sheer speculation" of a retaliatory motive. *Id*. at 1194.

An employee must also allege facts that the employer knew the employee had engaged in protected activity. *See Petersen v. Utah Dept. of Corr.*, 301 F.3d 1182, 1188-89 (10th Cir. 2002). The purpose of this requirement is to encourage employees to feel free to speak out against discrimination that violates Title VII. *Id*. at 1189. ("That purpose is hardly served by imposing sanctions upon employers who take action against employees who never communicate their concern about unlawful discrimination.")

Plaintiff has alleged sufficient facts to show that she engaged in a protected activity. By requesting to be moved from the day shift in order to avoid her supervisor, Plaintiff alleges that she told her employer of her supervisor's conduct and that she objected to it. Further, Plaintiff alleges that similarly situated employees who failed to add cultures into a mix were treated differently. (Am. Compl. (Doc. 8) ¶ 13.) Plaintiff also claims that she did not complain further because another worker who did complain was terminated. (*Id*.) Plaintiff's alleged actions show that she

9

communicated to Defendant a concern about unlawful sexual harassment, satisfying the first prong of a prima facie case of retaliation.

It is undisputed that Plaintiff was terminated from her position in February 2011 and therefore has suffered a materially adverse change in the terms of her employment, satisfying the second prong. *See Ulibarri*, 2006-NMSC-009, ¶ 16 ("A tangible employment action constitutes a significant change in employment status, such as … firing") (quoting *Burlington Indus., Inc. v Ellerth*, 524 U.S. 742, 761 (1998)).

With respect to the third prong of a retaliation claim, "[a] causal connection may be shown by "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action" in order to satisfy the third prong of a prima facie claim. *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (citing *Burrus v. United Tel. Co. of Kan., Inc.,* 683 F.2d 339, 343 (10th Cir. 1982). While the Tenth Circuit has held that a one and one-half month lapse between protected activity and adverse action may establish causation and a three-month lapse standing alone will not, the timing is less relevant if a Plaintiff alleges additional evidence from which a reasonable jury could find causation. *See id*. at 1253.

Here, Plaintiff has not alleged any facts indicating when she requested to be moved from the day shift. However, Plaintiff has alleged additional evidence which would allow a reasonable jury to find a link between her complaint and her termination. Namely, Plaintiff has claimed that other employees who made the same production errors were not similarly terminated. Also, Plaintiff alleges that it was not her responsibility to get the cultures at that time either. (Am. Compl. (Doc. 8) ¶ 13.) The jury could infer from this evidence that Plaintiff's requested shift transfer and complaints about sexual discrimination were the true motivation behind Defendant's decision to fire her, satisfying the third prong for a retaliation claim under the NMHRA and Title VII.

Consequently, Plaintiff has alleged sufficient facts to support her retaliation claims to survive dismissal at this stage of the proceedings.

Finally, Defendant's only argument that Plaintiff has not stated a quid pro quo sexual harassment claim is that the facts she alleges regarding Borjas do not amount to "sexual advances." As discussed above, the Court disagrees and finds that the factual allegations are sufficient to be categorized as "sexual advances" at this juncture of the litigation.

### C. 42 U.S.C. § 1981

Pursuant to 42 U.S.C. § 1981, Plaintiff claims that when Defendant terminated her contract and all the benefits and privileges of that contract, it was intentionally discriminating against her based on her race. (Am. Compl. (Doc. 8) ¶ 52.) Defendant argues that Plaintiff has failed to allege any factual support for the conclusion that Plaintiff was discriminated against on the basis of her race. (Def.'s Reply (Doc. 14) at 4.)

While Section 1981 "prohibits racial discrimination in the making and enforcement of private contracts," *Runyon v. McCrary*, 427 U.S. 160, 168 (1976), it does not provide a remedy for gender-based discrimination, *see id.* at 167. Proving discrimination under Section 1981 can be done through direct evidence of discrimination or by establishing a prima facia case of discrimination, which then shifts the burden to the defendant to offer a non-discriminatory rationale for the adverse employment action. *Crowe v. ADT Sec. Servs. Inc.*, 649 F.3d 1189, 1194-95 (10th Cir. 2011). If the defendant meets its burden, the plaintiff must show that the defendant's proffered rationale is pretextual. *Id.* at 1195. This is the same standard for proving employment discrimination under Title VII. *Id.* at 1194.

Plaintiff states that she is Hispanic and, thus, a protected racial minority under Section 1981. (Am. Compl. (Doc. 8) ¶ 50.) However, Plaintiff alleges no facts connecting her race to any of her

11

allegations of employment discrimination or hostile work environment. Without any factual support, the assertion that Defendant discriminated against Plaintiff on the basis of her race is a legal conclusion, which the Court must disregard when ruling on a Rule 12(b)(6) motion. *Khalik*, 671 F.3d at 1191. Therefore, Plaintiff has failed to state a plausible claim under Section 1981, and Defendant's request to dismiss the Section 1981 claim should be granted.

**IT IS THEREFORE ORDERED** that Defendant Southwest Cheese's Motion to Dismiss Pursuant to F.R.Civ.P. 12(b)(6) and Supporting Brief (**Doc. 3**), should be **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Defendant's request to dismiss Plaintiff's NMHRA and Title VII claims for sexual harassment resulting in a hostile work environment should be **DENIED**;

2. Defendant's request to dismiss Plaintiff's NMHRA and Title VII claims for retaliation and quid pro quo sexual harassment should be **DENIED**;

3. Defendant's request to dismiss Plaintiff's claim for violation of 42 U.S.C. § 1981 should be **GRANTED**;

4. Plaintiff's claim brought under 42 U.S.C. § 1981 is hereby **DISMISSED.**

_____
SENIOR UNITED STATES DISTRICT JUDGE