IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

YVONNE MACIAS,

     Plaintiff,

v.                                            No. Civ 12-350 LH/WPL

SOUTHWEST CHEESE COMPANY, L.L.C.,

     Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** comes before the Court on Defendant Southwest Cheese Company's ("SWC") Motion to Strike Affidavits. (SWC Mot., ECF No. 49)  In this motion, SWC seeks to strike portions of affidavits filed in support of Plaintiff Yvonne Macias's opposition to SWC's motion for summary judgment. (*See* Pl.'s Ex. 1-6 to Pl.'s Resp. to SWC's Mot. Summ. J., ECF No. 47-1 to 47-6)  The Court, having considered the motion, the parties' arguments and the relevant law, and otherwise being fully advised, concludes that the motion is granted in part and denied in part.

**I.**       **BACKGROUND**

In this lawsuit, Plaintiff has brought claims against SWC, her former employer, under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*., and the New Mexico Human Rights Act ("NMHRA"), N.M. Stat. Ann. § 28-1-7 (2004). (Pl.'s Am. Compl., ECF No. 8)  Plaintiff has also raised claims under New Mexico law for breach of contract, intentional infliction of emotional distress, and negligent supervision. (*Id.* at 9-15)

Plaintiff alleges that while she was employed at SWC, a male employee named Cody Stewart pulled down his pants and exposed his genitals to her while both were working at the

1

SWC production facility in Clovis, New Mexico.  She further alleges that a male supervisor, Jose

Borjas,[1] became obsessive towards her, engaged in flirtatious behavior, repeatedly called her into

his office for non-legitimate work-related reasons, stared at her in a sexually provocative

manner, and frequently stood uncomfortably close to her.  Plaintiff contends that as a result of

Stewart and Borjas's conduct, she was subjected to quid pro quo sexual harassment in violation

of Title VII and a sexually hostile work environment in violation of Title VII and the NMHRA.

On September 27, 2013, SWC moved for summary judgment, requesting dismissal of all

of Plaintiff's remaining[2] claims with prejudice. (SWC's Mot. Summ. J., ECF No. 45)  Plaintiff

responded to SWC's motion for summary judgment on October 9, 2013, and attached several

affidavits in support of her response brief. (Pl.'s Resp. to SWC's Mot. Summ. J. Ex. 1-6, ECF

No. 47-1 to 47-6)  In addition to her own affidavit, Plaintiff submitted the affidavits of four

former SWC employees: Lorena Chavez-Acosta, Rebecca Martinez, Margarita Holguin and

Misty English, as well as the affidavit of Sarah Stewart, the ex-wife of Cody Stewart. (*Id.*)  SWC

seeks to strike several statements found in each of these affidavits, arguing that the statements

are inadmissible because they (1) are not based on personal knowledge, (2) contradict earlier

deposition or affidavit testimony, (3) are hearsay, and/or (4) are not relevant to this lawsuit.

## II.    STANDARD OF REVIEW

Fed. R. Civ. P. 56(c)(4) provides that "[a]n affidavit or declaration used to support or

oppose a motion [for summary judgment] must be made on personal knowledge, set out facts

---

[1] The parties have used the name Jose Borjas and Jose Brojas interchangeably to refer to this individual in this lawsuit. Based on the disciplinary records submitted by the parties in the context of the summary judgment proceedings, it appears that the correct name of this individual is Jose Borjas.  (*See* ECF No. 47-7)

[2] Plaintiff also raised a claim in this case under 42 U.S.C. § 1981, which the Court dismissed in an earlier order. (Mem. Op. and Order, ECF No. 19)

that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Under the personal knowledge requirement, "an affidavit is inadmissible if the witness could not have actually perceived or observed that which he testifies to." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006) (internal quotation omitted).

In addition, inadmissible hearsay statements found in affidavits are generally disregarded at the summary judgment stage, "as those statements could not be presented at trial in any form." *Id.* at 1199; *see also Hansen v. PT Bank Negara Indonesia (Persero)*, 706 F.3d 1244, 1250 (10th Cir. 2013) (noting that "[a]lthough affidavits are entirely proper on summary judgment, the content or substance of the evidence contained therein must be admissible."); *see also* 11 *Moore's Federal Practice*, § 56.91[1] (Matthew Bender 3d Ed.) (stating the general rule that "[h]earsay statements in affidavits, deposition testimony, or interrogatory answers will not be considered unless they fall within one of the exceptions to the rule excluding hearsay testimony.").

Under some circumstances, an affidavit or a declaration may be disregarded if the testimony contradicts a witness's prior sworn statements. "[C]ourts will disregard a contrary affidavit when they conclude that it constitutes an attempt to create a sham fact issue." *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986) (stating that "the utility of summary judgment as a procedure for screening out sham fact issues would be greatly undermined if a party could create an issue of fact merely by submitting an affidavit contradicting his own prior testimony"). To determine whether a contradicting affidavit should be stricken because it is offered to create a sham fact issue, the Court considers the factors outlined in *Franks*: (1) "whether the affiant was cross-examined during his earlier testimony"; (2) "whether the affiant had access to the pertinent

evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence"; and (3) "whether the earlier testimony reflects confusion which the affidavit attempts to explain." *Id.*

## III.   ANALYSIS

The Court first addresses Plaintiff's initial argument that SWC's motion to strike should be summarily denied because the motion fails to comply with D.N.M.LR-Civ.10.5. (*See* Pl.'s Resp. 1, ECF No. 51)  Local Rule 10.5 provides that "[a]ll exhibits to a motion, response or reply, including excerpts from a deposition must not exceed a total of fifty (50) pages, unless all parties agree otherwise."   In this case, the exhibits attached to SWC's motion to strike total seventy (70) pages. (*See* SWC's Ex. A-F, ECF No. 49-1 to 49-6)  Plaintiff argues that SWC's failure to comply with Local Rule 10.5 should result in an automatic denial of SWC's motion to strike.

The Court declines to summarily deny SWC's motion to strike on this basis.  Throughout the course of this lawsuit, both parties have filed pleadings, motions, and other documents that have not complied with Local Rule 10.5 or other local rules governing page limits.  Plaintiff also has not complied with Local Rule 10.5; for example, the exhibits attached to Plaintiff's response brief to SWC's motion for summary judgment total sixty-two (62) pages. (Pl.'s Resp. to SWC's Mot. Summ. J. Ex. 1-11, ECF No. 47-1 to 47-11)   Similarly, SWC's motion for summary judgment, Plaintiff's response brief to that motion, and SWC's reply brief all violate D.N.M.LR-Civ.7.5, which limits the length of a motion and supporting brief to twenty-seven (27) pages, response brief to twenty-four (24) pages, and reply brief to twelve (12) pages.  Here, SWC's motion for summary judgment is thirty-six (36) pages; Plaintiff's response brief is forty-one (41) pages; and SWC's reply brief is eighteen (18) pages. (*See* SWC's Mot. Summ. J., ECF No. 45;

Pl.'s Resp., ECF No. 47; SWC's Reply, ECF. No. 48)  Given the broad failure of both parties to comply with the local rules governing page limits in this matter, the Court concludes that it is in the best interest of the parties for the Court to address SWC's motion to strike and the other pending motions on their merits rather than to require both parties at this stage in the lawsuit to re-submit the various filings in a manner that complies with Local Rules 7.5 and 10.5.  The Court, however, strongly counsels both parties to adhere to applicable page limits for future motions practice in this lawsuit.

Accordingly, the Court now turns to consider SWC's argument with respect to the affidavits filed by Plaintiff in support of her opposition to SWC's motion for summary judgment. The Court considers SWC's arguments with respect to each affidavit in turn below.

### A. Affidavit of Plaintiff Yvonne Macias ("Pl. Aff.", ECF No. 47-1)

SWC moves to strike several statements in Plaintiff's affidavit, arguing that the statements are not supported by personal knowledge, are contradicted by earlier deposition testimony given by Plaintiff, or constitute inadmissible hearsay.  (SWC Mot. 3-9)

The Court first considers those paragraphs of Plaintiff's affidavit that SWC maintains are contradicted by Plaintiff's earlier deposition testimony.[3]  (SWC Mot. 4-8)  In ¶ 6 of her affidavit, Plaintiff stated that she reported Cody Stewart's exposure of his genitals to her to a supervisor, Bryant Fernandez, and that Fernandez crumpled up her written report regarding the exposure incident and threw it in the trash.  SWC contends that this paragraph is contradicted by Plaintiff's earlier deposition testimony in which Plaintiff stated that she did not know what Fernandez did with her report and that she never saw the report again after she gave it to Fernandez. (*See* Pl. Dep. 95:24-25, 96:1, 96:25, 97:1-4 (ECF No. 49-1))  Applying the factors outlined in *Franks*

---

[3] Plaintiff's affidavit is dated October 6, 2013, and her deposition testimony was given on May 28, 2013. (*See* Pl. Dep., May 28, 2013, available at ECF No. 45-1 Ex. C and ECF No. 49-1)

*supra*, the Court concludes that this portion of ¶ 6 of Plaintiff's affidavit should be disregarded. Plaintiff offers no explanation in her affidavit for the earlier contrary statements. In addition, Plaintiff's earlier statements were unequivocal, were subject to cross-examination, and there is no indication that she was confused by the line of questioning during her deposition. Therefore, based on the direct contradiction between her affidavit and deposition testimony, the Court will strike Plaintiff's statement in ¶ 6 of her affidavit that Fernandez crumpled up her report and threw it in the trash.[4]

In ¶ 6 of her affidavit, Plaintiff also testifies that Stewart would "go upstairs and sexually leer" at her doing her work. SWC argues that this statement is contradicted by her deposition testimony that Stewart was always upstairs in the towers when she was working and "looking down" on her. (*See* Pl. Dep. 97:8-12 (ECF No. 49-1)) SWC contends that the Court should strike the affidavit statement because Plaintiff did not mention any "sexual leering" by Stewart in her earlier deposition. (SWC Mot. 5) The Court is not convinced by SWC's argument because the two statements are not contradictory in nature. Plaintiff's failure to discuss sexual leering during her deposition does not preclude the admission of this evidence based on her later affidavit.

SWC next challenges the admissibility of Plaintiff's statements in her affidavit as to the reason why Borjas called her into his office repeatedly during working hours. (SWC Mot. 6) SWC points specifically to ¶¶ 8 and 18 of Plaintiff's affidavit, where she stated that Borjas called her into his office for "absolutely no legitimate work related reason" and to "harass [her]

---

[4] In response to SWC's argument, Plaintiff cites to and quotes another portion of Plaintiff's deposition testimony where Plaintiff apparently did state that Fernandez threw her report in the trash. (Pl.'s Resp. 6-7, ECF No. 51) However, although Plaintiff included other excerpts from her deposition as an exhibit to her response brief, she failed to submit the specific page that contained this alleged statement. (*Id.*; *see also* Pl. Ex. 1, ECF No. 51-1) The Court was consequently unable to consider Plaintiff's assertion due to the lack of evidentiary support.

regarding petty non-essential issues."  SWC argues that these statements are not consistent with, or are contradicted by, Plaintiff's earlier deposition testimony where she stated that Borjas always had work-related questions to ask Plaintiff when he called her into his office.  (Pl. Dep. 107:17-25, 108:1-3, 108:11-20 (ECF No. 49-1))  The Court fails to see a conflict between the two statements and concludes that Plaintiff was not attempting to create a sham factual issue on this matter in her affidavit and deposition testimony.  In both sets of statements, Plaintiff has indicated that Borjas called her in to his office for work related reasons.  The fact that Plaintiff went further in her affidavit to state that she believed she was called in for non-legitimate or petty reasons at times does not render those portions of her affidavit inadmissible.  Because the statements are not directly contradictory, the Court will not strike Plaintiff's statement in ¶ 8 that she was called into Borjas's office again for absolutely no legitimate work related reason or her statement in ¶ 18 that she was called frequently to Borjas's office one day for petty non-essential issues.

In ¶ 9 of her affidavit, Plaintiff stated that she reported Borjas's conduct and harassment to Brenda Miller, SWC's then-Human Resources Director.  SWC argues that this statement should be struck because it is directly contradicted by Plaintiff's earlier deposition testimony. (SWC Mot. 7)  In her deposition, Plaintiff indicated that she did not complain to anyone at SWC about the specific conduct that Borjas subjected her to.  She specifically stated that: (1) she never complained to anyone in Human Resources about an exchange in the hallway where Borjas asked Plaintiff why she was so quiet; (Pl. Dep. 111:9-17 (ECF No. 49-1)); (2) she never complained to anyone about Borjas's frequent stares (Pl. Dep. 113:21-23 (ECF No. 49-1)); and (3) she never talked to anyone in Human Resources or management about the fact that Borjas stood too close to her at times (Pl. Dep. 115:3-10 (ECF No. 49-1)).  Later in her deposition,

Plaintiff stated that she did not remember talking to anyone in Human Resources about what she considered to be inappropriate behavior or sexual advances by Borjas.[5]  (Pl. Dep. 122:1-17 (ECF No. 49-1))  Having reviewed the deposition excerpts, the Court agrees with SWC that Plaintiff's affidavit testimony that she complained to Brenda Miller about Borjas is contradicted by Plaintiff's earlier deposition.  The Court will strike Plaintiff's statement in ¶ 9 that she reported Borjas's conduct to Miller under the factors outlined in *Franks*.  Plaintiff was cross-examined when she gave her earlier deposition testimony, and she stated unequivocally multiple times therein that she did not report Borjas's specific conduct to anyone in Human Resources.  Plaintiff also offered no explanation in her affidavit for the conflict between the statements.[6]  *See Franks*, 796 F.2d at 1237 (striking affidavit statements that were contradicted by the affiant's earlier testimony because (1) the affiant was cross-examined when he gave the earlier testimony, (2) the earlier testimony was unequivocal in nature, (3) there was no indication that the affidavit was based on newly discovered evidence and (4) the affidavit made no reference to the earlier contrary statements).

In ¶ 21 of her affidavit, Plaintiff testified that: "Chance Senkevich told me it was pointless to tell Brenda Miller about my problems with Jose Borjas because she would not believe me.  I complained about Cody Stewart previously and nothing was done."  SWC seeks to strike this paragraph, arguing that the statement implies that Plaintiff complained to Miller regarding Stewart. (SWC Mot. 8)  SWC contends that such an implication is contradicted by

---

[5]  In addition, Plaintiff stated at another point in her deposition that she did not remember ever asking Brenda Miller to move her to a different shift in order to avoid Borjas. (Pl. Dep. 187:14-20 (ECF No. 51-1))

[6] The Court also notes that the language of the affidavit itself is confusing as to whom Plaintiff reported the conduct to:  "I complained because of this harassment [by Borjas] to *Brenda Miller. However, Garcia* said "just hang in there.'" (emphasis added). (Pl. Aff. ¶ 9)

Plaintiff's deposition testimony that she never talked to anyone in Human Resources about the incident involving Stewart. (*Id.*)  The Court is not persuaded by Plaintiff's argument and will not strike this testimony.  The Court disagrees with SWC that Plaintiff's statement in her affidavit implies that she had previously complained about Stewart to Miller specifically.  Rather, the statement is simply that she had previously complained about Stewart.  Furthermore, any implications or inferences that can be drawn from the evidence presented in Plaintiff's affidavit are to be drawn in the light most favorable to Plaintiff, as the non-movant in the summary judgment proceedings.  *See S.E.C. v. Thompson*, 732 F.3d 1151, 1156-57 (10th Cir. 2013) (indicating that the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party in reviewing a motion for summary judgment).  The Court will not exclude ¶ 21 based on an inference that SWC would like the Court to draw in its favor.

Next, the Court considers SWC's arguments to strike portions of Plaintiff's affidavit testimony concerning disciplinary actions taken against her during her employment.  In ¶ 15, Plaintiff discusses a written warning that she received on December 31, 2010, and states that she received this written warning because she was "given the wrong targets by Managers."  In ¶ 16, Plaintiff testified further regarding the underlying incident that resulted in the written warning, indicating that the "HCV operator had stated in the log that the color had been put in and turned off the light on the computer indicating that the color had not been put in."  SWC seeks to strike these statements, arguing that the statements are hearsay because they rely on statements by out-of-court declarants. (SWC Mot. 9)  The Court disagrees that the statements are hearsay.  Plaintiff was present at the time of this incident and can therefore state in her affidavit, based on her personal knowledge, the reasons why she believes she received a written warning on that date.

SWC also seeks to strike a number of statements made by Plaintiff regarding the lack of discipline issued to male SWC employees, including Cody Stewart and Chance Senkevich.  *See*

Pl. Aff. ¶¶ 10, 12, 14, 17, 19, 20 (SWC Mot. 3-4).  SWC argues that because Plaintiff was an hourly line worker without any supervisory responsibility, she lacks personal knowledge of what, if any, disciplinary actions were taken against other employees. (*Id.*)  Upon review of Plaintiff's statements in these six paragraphs, the Court agrees with SWC that Plaintiff failed to provide any foundation for her personal knowledge of the disciplinary actions taken by SWC against male employees.[7]  The Court will not speculate as to how Plaintiff may have acquired the requisite personal knowledge to support these statements,[8] and therefore, the Court will strike those portions of the foregoing paragraphs that concern discipline of male employees.

More specifically, the Court will strike the following language because Plaintiff failed to state the basis for her personal knowledge of the discipline issued: :¶ 10 ("without being written up"); ¶ 12 ("However, other male employees with attendance issues greater than mine were not terminated such as Chance Senkevich and Cody Stewart"); ¶ 20 ("Male employees who engaged in the same behavior were not terminated").  In ¶¶ 17 and 19, Plaintiff describes two separate incidents where she was disciplined for arriving late for pre-shift meetings despite the fact that

---

[7] In her response brief, Plaintiff first contends that she "need not show how she acquired the information regarding discipline of other employees." (Pl. Resp. 5) Plaintiff's argument reflects a misunderstanding of the personal knowledge requirement for affidavits submitted in the course of summary judgment proceedings.  *See* Fed. R. Civ. P. 56(c)(4) (stating that "[a]n affidavit or declaration used to support or oppose a motion [for summary judgment] *must* be made on personal knowledge . . . ." (emphasis added)).  Plaintiff also argues that personal knowledge can be inferred from the context of an affidavit. (Pl. Resp. 5)  However, while personal knowledge may be inferred from the content or context of the affidavit, "the basis for the inference *must* be contained in the affidavit or declaration." *See* 11 Moore's Federal Practice, § 56.94[2][b] (emphasis added).  Plaintiff fails to point to any portion of her affidavit from which the Court can infer that she had personal knowledge of disciplinary actions taken by SWC. (Pl. Resp. 5)  The Court is unable to infer that she acquired personal knowledge of any discipline issued to other employees simply by virtue of her being a SWC employee.

[8] Plaintiff's counsel also alludes to Plaintiff acquiring personal knowledge based on her review of disciplinary records obtained during the discovery process. (Pl. Resp. 4-6)  However, the Court cannot rely on counsel's argument and representations in the response brief.  Plaintiff failed to state in her affidavit that she reviewed the disciplinary records of other employees.

male co-workers were late or did not show up at all.  The inference that Plaintiff asks the Court to draw here is that, in contrast to her treatment, male employees were not disciplined for arriving late or being absent from pre-shift meetings.  However, Plaintiff again fails to state the basis for her personal knowledge of the discipline issued to other employees for attendance-related issues and the Court will therefore strike these statements:  ¶ 17 ("despite the fact that male co-workers were late or did not show up at all") and ¶ 19 ("despite the fact that male employees did not show up at all or were late").  Likewise, in ¶ 14, Plaintiff implies that unlike her, male employees were not disciplined for failing to sign off on environmental log sheets. Again, Plaintiff fails to explain how she had personal knowledge of whether male employees were disciplined for this issue, and therefore, the Court will strike this language from ¶ 14.

**B.  Affidavit of Lorena Chavez-Acosta** ("Chavez-Acosta Aff.", ECF No. 47-2)

SWC seeks to strike portions of Lorena Chavez-Acosta's affidavit on the basis that she lacked personal knowledge to support the statements therein. In ¶ 3, Chavez-Acosta stated that Cody Stewart was friends with Eric Denton.  SWC argues that this statement should not be considered by the Court because Chavez-Acosta lacks personal knowledge of the friendship. (SWC Mot. 10)  The Court agrees that Chavez-Acosta failed to state in her affidavit the basis for her personal knowledge of a friendship between Stewart and Denton.  The Court is unable to infer that Chavez-Acosta had personal knowledge of the friendship merely because all three were SWC employees. *See* 11 *Moore's Federal Practice*, § 56.94[2][b] (indicating that "[s]ometimes personal knowledge may be inferred from the content or context of the affidavit. . . . If personal knowledge is to be inferred, the basis for the inference must be contained in the affidavit or declaration.").  The Court will therefore disregard this testimony.

In ¶ 2 of her affidavit, Chavez-Acosta states that Jose Borjas began an extramarital affair with another SWC female employee, Beronica Bravo, "as soon as it became apparent that he could not have an affair with [Plaintiff]." SWC seeks to strike this statement on the ground that Chavez-Acosta lacked personal knowledge of the affair. (SWC Mot. 9-10)  The Court agrees with SWC that Chavez-Acosta failed to identify any underlying facts in her affidavit to show her personal knowledge of Borjas's marital status or an affair between Borjas and Bravo. Likewise, Chavez-Acosta fails to provide any facts (nor can any be inferred from the content of the affidavit) underlying her conclusory assertion that Borjas began the affair with Bravo after it became apparent that he could not have an affair with Plaintiff.  The Court will therefore strike ¶ 2 of Chavez-Acosta's affidavit.

Next, SWC challenges the admissibility of portions of ¶ 4 of Chavez-Acosta's affidavit testimony regarding the October 2010 incident when Cody Stewart allegedly exposed himself to Chavez-Acosta while both were at work. (SWC Mot. 10-11)  According to ¶ 4, after Stewart allegedly exposed himself to her, Chavez-Acosta spoke with Plaintiff about the incident, and Plaintiff told her that "she had previously had the same thing happen to her, but nothing was done by management."  SWC does not challenge the admissibility of Chavez-Acosta's affidavit testimony that she told Plaintiff about Stewart's behavior. (SWC Mot. 10-11)  Rather, SWC argues that the Court strike the last portion of ¶ 4 where Chavez-Acosta recounts what Plaintiff told her. (*Id.*)  SWC argues that the Court should strike what Plaintiff told Chavez-Acosta because it is inconsistent with prior testimony given by Chavez-Acosta in another lawsuit.  Upon review of ¶ 4, however, the Court concludes that it will strike what Plaintiff told Chavez-Acosta because the statement constitutes inadmissible hearsay.  Therefore, the statement that "she

[Plaintiff] had previously had the same thing happen to her, but nothing was done by management" is stricken from Chavez-Acosta's affidavit.

**C.  Affidavit of Rebecca Martinez** ("Martinez Aff.", ECF No. 47-3)

SWC initially challenges the admissibility of two statements made by Martinez regarding work attendance and discipline of male SWC employees. (SWC Mot. 11-12)  In ¶ 5, Martinez stated that "Cody Stewart and Chance Senkevich had worse attendance" than Plaintiff.  SWC argues that Martinez lacks personal knowledge for this statement because she was not the male employees' supervisor and also was not responsible for keeping track of employee attendance. The Court is not persuaded by SWC's argument primarily because SWC fails to point to any evidence in the record to support its assertion that Martinez was not the supervisor of these employees, that she was not responsible for tracking employee attendance, or that she had no personal knowledge of their attendance records.  *See Pinkerton v. Colorado Dep't of Transp.*, 563 F.3d 1052, 1061 (10th Cir. 2009) (reiterating that "the argument of counsel is not evidence").  Martinez states in her affidavit that she was aware of the policies and procedures that SWC engaged in with regard to attendance. (Martinez Aff. ¶ 5)  A reasonable inference can be drawn that Martinez's knowledge of the attendance policies and procedures as well as her position as a team leader provided her with the requisite personal knowledge regarding the attendance history of SWC employees, including Stewart and Senkevich.  The Court will not strike this statement.

Next, in ¶ 8 of her affidavit, Martinez testified that male employees "did not show up for pre-shift meetings or were late and not disciplined."  SWC argues that this statement is vague because it fails to mention any employees by name and also does not identify specific pre-shift meetings. (SWC Mot. 12)  SWC further contends that this statement is contradicted by earlier

deposition testimony that Martinez gave in another lawsuit.  (*Id.*)  Martinez's affidavit was dated October 6, 2013.  Her deposition in another case was taken on January 24, 2013.  In that deposition, Martinez stated that she had no basis to know what discipline had been given to other employees and also that her knowledge of disciplinary actions was based on mere speculation and hearsay.  (Martinez Dep. 193:18-23, Jan. 24, 2013, ECF No. 49-5)  The Court agrees with SWC that Martinez's statement is unnecessarily vague and nonspecific.  *See Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 978 (10th Cir. 2008) (indicating that "[w]hen a party relies on affidavit evidence, it may be insufficient to create a triable fact if it is nonspecific or otherwise non-responsive, vague, conclusory, or self-serving.").  Although the Court would not necessarily strike this statement on that basis alone, the Court also concludes that the affidavit statement is contradicted by Martinez's earlier deposition testimony.  It appears that Plaintiff is attempting to create a fact issue as to whether male employees were disciplined differently for attendance issues than female employees by SWC management.  However, the contradiction in Martinez's statements does not fit within the factors outlined in *Franks*.  Consequently, the Court will not consider ¶ 8 of Martinez's affidavit as evidence supporting Plaintiff's opposition to SWC's motion for summary judgment.

In ¶ 2 of her affidavit, Martinez stated that she was a team leader during the time that Plaintiff was employed with SWC, that she supervised Plaintiff for approximately one year in 2010, and that Plaintiff was "an excellent, hard-working, honest employee and *at all times* qualified to perform her work at SWC." (Emphasis added).  SWC seeks to strike the language "at all times" from the foregoing statement, contending that Martinez could only have personal knowledge of whether Plaintiff was qualified to perform her work during the year (2010) that she was her direct supervisor. (SWC Mot. 13)  Since Martinez does not state in her affidavit that she

worked directly with Plaintiff outside of the 2010 calendar year, SWC contends that Martinez could not have personal knowledge that Plaintiff was qualified to perform her job at all times throughout her employment. (*Id.*)   The Court agrees with SWC that Martinez's affidavit establishes her personal knowledge of Plaintiff's qualifications only as to calendar year 2010. The Court will limit Martinez's statement regarding Plaintiff's qualifications accordingly.

### D.  Affidavit of Margarita Holguin ("Holguin Aff.", ECF No. 47-4)

Next, SWC seeks to strike ¶ 6 of Margarita Holguin's affidavit, and more specifically, Holguin's statement that she was terminated from her job at SWC in retaliation for reporting Cody Stewart.  (SWC Mot. 13)  SWC argues that Holguin's statement is unsupported because according to the affidavit of SWC Human Resources Director, Brenda Miller, Holguin was not selected for a permanent position with SWC because she falsified her education qualifications on her job application.  (*Id.*)  SWC further contends that Holguin was not "terminated" from her temporary position, but that SWC elected not to extend her permanent employment.  (*Id.*) The Court will not strike Holguin's testimony, as SWC's argument merely points out differing opinions by two individuals, Holguin and Miller, as to the reason for Holguin's separation from her employment with SWC.  *See* 11 *Moore's Federal Practice*, § 56.94[5][c] (stating that "[t]he 'sham affidavit' doctrine applies only when the discrepancy is between two instances of one witness's testimony.  It does not apply when the contradiction is between the testimony of two different witnesses, in which case the court must refrain from credibility determinations and view the evidence in the light most favorable to the nonmovant.").

### E.  Affidavit of Sarah Stewart ("Stewart Aff.", ECF No. 47-5)

SWC seeks to strike portions of ¶¶ 3 and 5 of Sarah Stewart's affidavit on the basis that Stewart lacked personal knowledge to support the statements therein.  In ¶ 3, Sarah Stewart,

Cody Stewart's now ex-wife, testified about a SWC going-away party in November 2008 that she and Cody Stewart attended along with other SWC employees and SWC management team members.  She testified that Cody Stewart took a picture of his genitals while at the party and then passed that picture around to other SWC employees present at the party, including members of SWC management. She states that "[n]obody from the Southwest Cheese management reprimanded Mr. Stewart" for the picture.  SWC seeks to strike this statement, arguing that Sarah Stewart lacks personal knowledge as to whether Cody Stewart was reprimanded for the picture. (SWC Mot. 14)  SWC contends that since Sarah Stewart was not an SWC employee and consequently had no role in employee discipline, she could not have known that Stewart was not reprimanded.  The Court concludes that Sarah Stewart failed to state the basis for her personal knowledge of discipline issued by SWC in her affidavit and therefore, the Court will strike the statement that "[n]obody from the Southwest Cheese management reprimanded Mr. Stewart" for the picture.

SWC also seeks to strike another portion of ¶ 3 of Sarah Stewart's affidavit.  With regard to the party, Sarah Stewart stated that "[n]obody else encouraged or told Mr. Stewart to take such a photograph and the conduct was definitely unwelcome."  SWC argues that this statement should be struck because Sarah Stewart could not have known that the conduct was unwelcome by the rest of the persons in attendance. (SWC Mot. 14)  The Court will strike this testimony because Sarah Stewart failed to state the basis for her personal knowledge of the opinions of the others present at the party to whom Cody Stewart showed the photograph.

In ¶ 5, Stewart stated that Cody Stewart and Eric Denton were close personal friends. SWC argues that this paragraph should be struck because Stewart lacks the requisite personal knowledge of this fact. (SWC Mot. 14)  The Court disagrees.  Because Sarah Stewart was

married to Cody Stewart from 2005 until 2012, a reasonable inference can be drawn that she had personal knowledge of who Cody Stewart's friends were during that time period. The Court will therefore not strike this paragraph.

**F. Affidavit of Misty English** ("English Aff.", ECF No. 47-6)

SWC seeks to strike ¶¶ 2, 3, and 4 of Misty English's affidavit on grounds of relevancy. (SWC Mot. 14-15)  In ¶¶ 2 and 3, English testifies regarding alleged conduct by a male SWC employee, Donnie Romero.  SWC argues that this conduct is irrelevant to Plaintiff's lawsuit as Plaintiff has not set forth any factual allegations involving Donnie Romero.  Plaintiff agrees that these paragraphs of English's affidavit are not relevant, and also does not oppose the striking of these paragraphs from the affidavit.  (Pl.'s Resp. 17) Therefore, the Court will not consider ¶¶ 2 and 3 of English's affidavit.

In ¶ 4 of her affidavit, English testifies regarding an incident between July 2010 and January 2011 involving Cody Stewart during which he asked her whether she wanted to see his penis.  SWC argues that this paragraph should not be considered by the Court because English does not allege that Plaintiff witnessed the incident between Stewart and English. (SWC Mot. 15)  Plaintiff responds that English's affidavit testimony regarding Stewart is relevant and admissible because it shows that a hostile work environment existed for female employees both prior to and after the June 2009 incident when Stewart allegedly exposed himself to Plaintiff. (Pl.'s Resp. 17-19)

The Court will not consider ¶ 4 of English's affidavit because there is no evidence in the record that Plaintiff was aware of the incident involving English and Stewart.  While a hostile work environment claim can include evidence of conduct directed at other coworker(s), the claimant must be aware of—i.e., have personal knowledge of—the conduct.  *See Hirase-Doi v.*

17

*U.S. West Commc'ns, Inc.*, 61 F.3d 777, 782 (10th Cir. 1995) (stating that while "evidence of a general work atmosphere, including evidence of harassment of other women, may be considered in evaluating a [hostile work environment] claim, the claimant "may only rely on evidence relating to harassment of which she was aware during the time that she was allegedly subject to a hostile work environment.") (overruled on other grounds); *see also Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1146 (10th Cir. 2008) (noting that evidence of a general work atmosphere, including evidence of harassment of other employees, may be considered in evaluating a hostile work environment claim as long as the plaintiff presents evidence that he or she knew about the offending behavior).  Because neither Plaintiff nor English have alleged that Plaintiff witnessed or was otherwise aware of the alleged incident involving English and Stewart, English's affidavit testimony regarding Stewart is not relevant to Plaintiff's claims.  Stated differently, Plaintiff could not have subjectively perceived Stewart's alleged behavior towards English as creating a hostile work environment for her unless she knew of that behavior.  *See Hirase-Doi*, 61 F.3d at 782.  Consequently, the Court will strike ¶ 4 of English's affidavit for purposes of ruling on SWC's motion for summary judgment.

## IV.    CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Southwest Cheese Company's Motion to Strike Affidavits (ECF No. 49) is granted in part and denied in part as stated herein.

_____
SENIOR UNITED STATES DISTRICT JUDGE