## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

YVONNE MACIAS,

      Plaintiff,

v.                                       No. Civ. 12-350 LH/WPL

SOUTHWEST CHEESE COMPANY, L.L.C.,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Southwest Cheese Company, LLC's (hereafter "SWC") Motion for Summary Judgment and Brief in Support. (ECF No. 45) The Court, having considered the motion, all related briefs and evidence, applicable law, and otherwise being fully advised, concludes that the motion is well-taken and shall be granted as to Plaintiff's claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and the New Mexico Human Rights Act ("NMHRA"). Plaintiff's Title VII and NMHRA claims are hereby dismissed. Because the Court's decision disposes of all of Plaintiff's federal claims, the Court declines to exercise jurisdiction over Plaintiff's remaining New Mexico state law claims. Therefore, Plaintiff's state law claims for breach of contract, intentional infliction of emotional distress, and negligent supervision are remanded to the Ninth Judicial District Court for the State of New Mexico.

## A.    BACKGROUND

This is a gender-based employment discrimination lawsuit brought by Plaintiff Yvonne Macias against SWC, her former employer, under Title VII of the Civil Rights Act of 1964

("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the New Mexico Human Rights Act ("NMHRA"), N.M. Stat. Ann. § 28-1-7 (2004). (Pl.'s Am. Compl., ECF No. 8)  Plaintiff has also asserted state law claims for breach of contract, intentional infliction of emotional distress, and negligent supervision. (*Id.* at 9-15)

The relevant operative facts of this case are set forth below for purposes of the Court's ruling on SWC's motion for summary judgment. The Court notes that both parties filed motions to strike certain evidence submitted in support of their respective positions.  (*See* SWC Mot. to Strike Affidavits (ECF No. 49) *and* Plaintiff's Mot. to Strike (ECF No. 52)).  The Court's memorandum opinions and orders deciding those motions have been entered and filed in the record, (ECF Nos. 59 and 60) and thus, the following factual background reflects the Court's rulings on those motions.

### 1. Factual Basis for Plaintiff's Claims

SWC produces cheese and dairy whey products. (Leah Jackson Aff. ¶ 4, ECF No. 45-1 Ex. A)  SWC's production facility is located in Clovis, New Mexico, and operates twenty-four hours a day, seven days a week. (*Id.* at ¶¶ 4, 6)  SWC has more than 300 employees. (*Id.* at ¶ 5)

Plaintiff worked at SWC's production facility from February 2009 until her termination on February 8, 2011. (Pl. Aff. ¶¶ 2, 20, ECF No. 47-1)  Initially, Plaintiff worked for SWC as a temporary employee through a staffing company. (*Id.* ¶ 2)  In September 2009, SWC offered Plaintiff a position working directly for the company as a Cheese Operator Level 1. (Jackson Aff. Ex. A-4) Plaintiff accepted SWC's offer of employment and began working as an hourly employee in the Cheese Operator Level 1 position during the night shift on September 16, 2009. (*Id.*; Pl. Aff. ¶ 3)

Plaintiff signed an offer letter for this position, which stated that her employment with SWC was on an "at-will" basis (hereafter "SWC at-will employment policy"). (Jackson Aff. Ex. A-4)  The letter specified that Plaintiff's employment could be "terminated by either the employee or the company at any time, with or without notice, and for any reason not expressly prohibited by law." (*Id.*)  The letter further provided that Plaintiff's "at-will" employment status could only be changed by written agreement of the President/CEO of SWC. (*Id.*)  SWC's at-will employment policy was also included in the SWC Employee Handbook that Plaintiff acknowledged receiving at the start of her employment. (Jackson Aff. Ex. A-3; *see also* Pl. Dep. 36:25, 37:1-6, May 28, 2013, ECF No. 45-1 Ex. C)

SWC's hourly cheese production employees are organized into shifts and report to Cheese Team Leaders, who in turn report to three Production Managers. (Jackson Aff. ¶ 6) Production Managers ultimately report to the Cheese Plant Manager. (*Id.*)  During her employment with SWC, Plaintiff reported to Bryant Fernandez, Ryan Ruiz, Cody Stewart, Danny Garcia and Rebecca Martinez.[1] (Pl. Aff. ¶ 5)  At all relevant times, Brenda Miller was SWC's Human Resources Director. (Brenda Miller Aff. ¶ 2, ECF No. 45-1 Ex. B)

SWC maintains policies prohibiting discrimination and harassment, particularly sexual harassment. (Miller Aff. ¶ 3; *see also* ECF No. 45-1 Ex. A-2, Ex. A-3)  SWC's policy against harassment (hereafter "SWC's anti-harassment policy") is included in the Employee Handbook that all employees receive. (Miller Aff. ¶ 3)  When employees are hired, they must sign an acknowledgement that they read and understood the provisions of the Employee Handbook. (*Id.*)

---

[1] The Court is unable to determine from the record what positions these individuals held, with the exception of Rebecca Martinez, who indicated in her affidavit that she was a Team Leader from 2009 until Spring 2011, and that she supervised Plaintiff for approximately one year in 2010. (Rebecca Martinez Aff. ¶¶ 1-2, ECF No. 47-3)

In addition, SWC's anti-harassment policy is posted throughout SWC's production facility and SWC requires its employees to undergo annual anti-harassment training. (*Id.*)

    a.  <u>Plaintiff's Claims Against Cody Stewart</u>

Plaintiff states that sometime in June 2009—while she was still a temporary employee—a SWC male employee, Cody Stewart ("Stewart"), pulled down his pants and exposed his genitals to Plaintiff and another female employee, Margarita Holguin. (Pl. Aff. ¶ 6)  The incident occurred during the middle of the night shift and lasted approximately thirty seconds. (*Id.*)  At the time of the exposure incident, Stewart was an Assistant Team Leader. (*Id.*; *see also* Miller Aff. ¶ 9)  Plaintiff reported the incident to Bryant Fernandez, a shift supervisor.  Fernandez asked her to put her report in writing so that he could give it to Human Resources. (Pl. Aff. ¶ 6) Plaintiff gave a written report of the incident to Fernandez, and at that time, Fernandez told her that he would give the written report to Human Resources. (*Id.*)  Plaintiff testified at her deposition that she did not check to see if Fernandez turned in her written report, and she herself never spoke to anyone in Human Resources about the exposure incident. (Pl. Dep. 96:5-7, ECF No. 48-1)  Plaintiff states in her affidavit that she "complained about Cody Stewart . . . and nothing was done." (Pl. Aff. ¶ 21)

Plaintiff maintains that throughout the rest of her employment, she was afraid on a daily basis that Stewart would again expose himself to her or that he would attempt to sexually assault her. (*Id.* ¶ 7)  After the exposure incident, Stewart would go upstairs at SWC's production facility and leer down[2] at Plaintiff in a sexual manner that made her feel very uncomfortable

---

[2] In Plaintiff's deposition, she described this conduct as follows:

    Q     After that particular incident [exposure incident], did you ever have any other incidents involving Cody Stewart?

    A     Well, he was always when I was working at the towers, he was always upstairs; looking down.

while she was doing her work. (*Id.*)  At some point during her employment, Plaintiff moved to the day shift. (*Id.* ¶ 8) However, there is no evidence in the record showing how long after the incident exposure this shift change occurred and whether Stewart also changed shifts at any point during Plaintiff's employment.

One other female SWC employee, Lorena Chavez-Acosta, testified by affidavit that Stewart also exposed himself to her twice on the same night in October 2010. (Lorena Chavez-Acosta Aff. ¶¶ 3-4, ECF No. 47-2)  Chavez-Acosta testified that she told Plaintiff about these incidents in the break room on the same night that they occurred. (*Id.* ¶ 4) Plaintiff stated in her affidavit that she was "well aware that Cody Stewart had a habit, and routine of exposing his genitals to female employees at [SWC]." (Plaintiff Yvonne Macias's Aff.[3] ¶ 3, ECF No. 48-1)

b.  <u>Plaintiff's Claims Against Jose Borjas</u>[4]

Plaintiff also alleges inappropriate conduct by Jose Borjas, a Team Leader, that occurred during the last month of her employment with SWC.  Plaintiff states that Jose Borjas became obsessive towards her beginning sometime in January 2011 until her termination on February 8, 2011. (Pl. Aff. ¶ 8)  Borjas approached Plaintiff in a hallway at work and asked her in a "flirtatious manner 'why are you so quiet[?]'" (*Id.*)  Plaintiff responded that she was "always

---

       Q     Anything else?
       A     No, ma'am.
(Pl. Dep. 97:8-14)

[3] The Court notes that two affidavits of Plaintiff were submitted by the parties, the first (ECF No. 47-1, dated October 6, 2013) in support of Plaintiff's Response Brief and the second in support of SWC's Reply (ECF No. 48-1 Ex. E, dated April 10, 2013).
     In addition, the Court notes that there are also two affidavits of Lorena Chavez-Acosta in the record.  (ECF No. 47-2; ECF No. 49-2 Ex. B)

[4] The parties have used the name Jose Borjas and Jose Brojas interchangeably to refer to this individual in this lawsuit. Based on the employment and disciplinary records provided in this case, it appears that the correct name of this individual is Jose Borjas. (*See* ECF No. 47-7)

busy," and then ignored Borjas and walked away. (*Id.*; Pl. Dep. 109:20-24, 111:1-8 ECF No. 45-1)  After this incident, Plaintiff maintains that everything changed between Borjas and her. (*Id.*)  Borjas began calling Plaintiff into his office via radio for non-legitimate work-related reasons up to as many as five times in a single shift. (Pl. Aff. ¶ 8)  Other employees would laugh when they heard Borjas's radio transmissions asking Plaintiff to report to his office. (*Id.*)  Borjas also stared at Plaintiff in a sexually provocative manner and made her feel uncomfortable. (*Id.*)  Borjas became visibly angry when Plaintiff did not flirt back with him. (*Id.*)  Borjas frequently stood uncomfortably close to Plaintiff, such that she was forced at times to scrape certain work equipment on her knees. (*Id.*)  Plaintiff states in her affidavit that Borjas made her employment miserable in retaliation for her refusal to accept his flirtations and flirt back, (*Id.* at ¶ 9),  and that she was given too much work, was sometimes not given a break, and that she was asked to relieve Level III employees even though she herself was not a Level III employee. (*Id.* at ¶ 8)

Plaintiff testified further in her deposition that Borjas asked her only work-related questions when she was in his office and that he never said anything she considered to be offensive while she was in his office. (Pl. Dep. 107:5-8, 25, 108:1-3, ECF No. 45-1)  She further testified that Borjas never touched her or asked her out on a date. (*Id.* at 108:24-25, 109:5-7)  He also never asked Plaintiff to kiss him, touch him, or to do anything for him that was not work-related. (*Id* at 109:8-14)  On the occasions that Borjas stood so close to Plaintiff that she was forced to step back, Plaintiff testified that Borjas asked her questions related to work at those times, that he never touched her during these encounters, and that she never asked him to step away or told him that he was standing too close to her. (*Id.* at 114:5-25)

Plaintiff states that she spoke with Danny Garcia about moving to a different shift because she was "tired of Jose Borjas." (*Id.* at 117:6-20)  She also talked to Rebecca Martinez,

6

Ricardo Olivas, Ryan Ruiz, and Robert Ramos about moving to a different shift to get away from Borjas because "he was making [her] job miserable."   (*Id.* at 118:20-25, 119:3, 119:17-25, 120:18-25)  Plaintiff, however, testified that she did not tell anyone about the specific incident in the hallway involving Borjas (*Id.* at 111:9-17), Borjas's repeated radio transmissions asking her to come into his office, his frequent staring (*Id.* at 113:21-23), or his standing uncomfortably close to her (*Id.* at 115:3-10).

Plaintiff's employment was terminated on February 8, 2011. (Miller Aff. ¶ 8)  According to Brenda Miller, SWC's Human Resources Director, Plaintiff was terminated after she failed to add the proper culture to a vat which resulted in a significant loss of product. (*Id.*)  Miller also stated that Plaintiff received twelve disciplinary write-ups between April 2010 and February 2011 for "consistent performance failures and attendance problems." (*Id.* at ¶ 7)  Miller stated that it was these problems that ultimately led to Plaintiff's termination. (*Id.*) Plaintiff acknowledged receiving the twelve write-ups in her affidavit. (Pl. Aff. ¶¶ 10-20)

## 2.  *Procedural History of this Lawsuit*

On July 11, 2011, Plaintiff filed a charge of discrimination with the New Mexico Department of Workforce Solutions, Human Rights Bureau ("NMHRB"), alleging gender discrimination and retaliation by SWC.[5] (ECF No. 13-1 at 4)  Plaintiff asserted that the alleged discrimination she faced was a continuing action, with the earliest date of discrimination

---

[5] The Court notes that Plaintiff has alleged in various pleadings that she first filed her charge of discrimination with the NMHRB on June 30, 2011, and that she subsequently filed an amended charge on July 11, 2011.  (Pl.'s Am. Compl. 2, ECF No. 8; *see also* Pl.'s State Compl. 1-2, ECF No. 13-1).  However, only the amended charge of discrimination is part of the record in this case as Plaintiff failed to submit the initial charge of discrimination to the Court.  Accordingly, while SWC does not dispute in its summary judgment motion that Plaintiff filed an initial charge of discrimination on June 30, 2011, (*see* SWC's Mot. Summ. J. 20, ECF No. 45), the Court relies solely on the content and filing date of the amended charge of discrimination for purposes of its analysis.

occurring on February 23, 2009, and the latest occurring on January 6, 2011. (*Id*.)  At Plaintiff's request, the NMHRB issued an order of non-determination on February 21, 2012. (ECF No. 13-1 at 7-8)  On February 27, 2012, Plaintiff filed an appeal of the order of non-determination in the Ninth Judicial District Court. (ECF No. 13-1 at 1-3)  SWC removed the case to this Court based on federal question jurisdiction on April 5, 2012. (ECF No. 1)

After the case was removed to this Court, Plaintiff filed an amended complaint, asserting claims for violations of Title VII, 42 U.S.C. § 1981 ("Section 1981"), and the NMHRA. (Pl.'s Am. Compl., ECF No. 8)  She has also raised state law claims for breach of contract, intentional infliction of emotional distress, and negligent supervision. (*Id*.)  The Court has dismissed Plaintiff's Section 1981 claim, but all other claims remain in the case. (*See* Mem. Op. and Order, ECF No. 19)

Section G of Plaintiff's amended complaint states her sexual harassment claim under Title VII. (Pl.'s Am. Compl. 7-9)  Specifically, Plaintiff alleges violations of Title VII resulting from quid pro quo sexual harassment as well as a sexually hostile work environment. (Pl.'s Am. Compl. 7-8, ¶¶ 25-26)  Both of Plaintiff's claims under Title VII center around the alleged conduct by Borjas. (*Id*.)  Plaintiff alleges that she was subjected to quid pro quo harassment because SWC "discriminated against [her] by firing her for failing to accept her supervisor[] [Borjas's] sexual advances." (*Id*. at ¶ 25; *see id*. at ¶ 24)  As to her sexually hostile environment claim, Plaintiff alleges that a sexually hostile work environment arose based on Borjas's conduct. (*Id*. at ¶ 26)  Plaintiff specifically points to Borjas's acts of asking Plaintiff to come to his office via radio, his staring at her, and his standing uncomfortably close to her on a frequent and repeated basis. (*Id*.)  She alleges that Borjas made her job "miserable because she did not accept his sexual advances" and that his conduct "unreasonably interfered with plaintiff's work

performance." (*Id.*)  Plaintiff contends that she suffered an adverse employment action, i.e., her termination, as a result of SWC's intentional discrimination. (*Id.* at ¶ 27)

In Section F of her amended complaint, Plaintiff alleges a hostile work environment claim under the NMHRA. (Pl.'s Am. Compl. 5-7)  She claims that she was subjected to unwelcome sexual harassment by SWC, through its agents or supervisors, which resulted in a hostile work environment that interfered with her emotional well-being. (*Id.* at ¶¶ 15-16) The Court notes that Plaintiff failed to enumerate in Section F the conduct that she alleges resulted in a hostile work environment under the NMHRA; instead, she incorporated all factual allegations previously stated in her complaint.  (*Id.* at ¶ 14)  In addition, Plaintiff asserts in Section F of her complaint that SWC "illegally retaliated against [her] by terminating her because she rejected her supervisor's [Borjas's] unwanted sexual advances." (ECF No. 8, ¶ 17)  SWC treats the foregoing in its motion for summary judgment as sufficiently raising a retaliation claim under the NMHRA. (SWC Mot. Summ. J. 23-24)

To summarize, Plaintiff has raised a quid pro quo sexual harassment claim under Title VII,[6] and she has raised sexually hostile work environment claims under both Title VII and the NMHRA.  In addition, Plaintiff has asserted state law claims for breach of contract, intentional infliction of emotional distress, and negligent supervision.

**B.      ANALYSIS**

In its motion, SWC seeks summary judgment on Plaintiff's claims under Title VII and the NMHRA as well as her state law claims (hereafter "SWC Mot."). (*See* SWC's Mot. Summ.

---

[6] SWC states in its motion for summary judgment that Plaintiff has brought quid pro quo sexual harassment claims under both Title VII and the NMHRA. (SWC Mot. Summ. J. 13) However, the Court's review of Plaintiff's amended complaint shows that Plaintiff raised quid pro quo sexual harassment solely in the context of her Title VII claims set forth in Section G of her complaint. (Pl.'s Am. Compl. ¶ 25)

J., ECF No. 45)   After first setting forth the applicable legal standard, the Court will address

SWC's specific arguments with respect to each of Plaintiff's claims.

## 1.   *Summary Judgment Legal Standard*

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a).   There is no genuine dispute as to any material fact unless the evidence is such that

a reasonable jury could return a verdict for the non-moving party.   *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986).   In reviewing a motion for summary judgment, the Court views

the evidence and all reasonable inferences therefrom in the light most favorable to the non-

moving party.   *S.E.C. v. Thompson*, 732 F.3d 1151, 1156-57 (10th Cir. 2013) (quotation

omitted).   "[T]he mere existence of some alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at

247-48 (emphasis omitted).   Rather, only disputes over facts that might affect the outcome of the

case will properly preclude the entry of summary judgment.   *Id.* at 248.   Initially, the party

seeking summary judgment has the burden of showing that there is no genuine dispute as to any

material fact.   *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993).

Once the moving party meets its burden, the non-moving party must show that genuine issues

remain for trial.   *Id.*

## 2.   *Plaintiff's Claims under Title VII and the NMHRA*

SWC argues that it is entitled to summary judgment on Plaintiff's quid pro quo sexual

harassment and hostile work environment claims under Title VII and the NMHRA.   Under Title

VII, it is an "unlawful employment practice for an employer . . . to discriminate against any

individual with respect to his compensation, terms, conditions, or privileges of employment,

because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1).  Similarly, Section 28-1-7 of

the NMHRA provides that it is an "unlawful discriminatory practice for . . . an employer, unless

based on a bona fide occupational qualification or other statutory prohibition, to refuse to hire, to

discharge, to promote or demote or to discriminate in matters of compensation, terms, conditions

or privileges of employment against any person otherwise qualified because of . . . [the person's]

sex." N.M. Stat. Ann. § 28-1-7.  In considering NMHRA claims, New Mexico courts have relied

upon federal civil rights adjudication of Title VII claims for guidance.  *See Ocana v. American

Furniture Co.*, 2004-NMSC-018, ¶ 23, 135 N.M 539, 91 P.3d 58; *see also Ulibarri v. State of

New Mexico Corrections Acad.*, 2006-NMSC-009, ¶¶ 11-13, 139 N.M. 193, 131 P.3d 43.

Accordingly, the Court will consider SWC's arguments as to Plaintiff's claims under Title VII

and the NMHRA together.

    a.  <u>Plaintiff's Hostile Work Environment Claims under Title VII and the NMHRA</u>

      Title VII and the NMHRA both prohibit an employer from subjecting an employee to a

hostile work environment.  *See Harsco v. Renner*, 475 F.39 1179, 1186 (10th Cir. 2007); *see also

Ocana*, 2004-NMSC-018, ¶ 23.  As indicated earlier, Plaintiff asserts in her complaint that she

was subjected to a sexually hostile work environment throughout her employment in violation of

Title VII (Section G) and the NMHRA (Section F). (ECF No. 8, ¶¶ 15, 16, 26)  Plaintiff

specifically alleges that she was subjected to a sexually hostile work environment based on the

conduct of Jose Borjas as well as the conduct of SWC's "agents and supervisors." (*Id.*) Based on

these specific assertions as well as Plaintiff's general statement in Sections F and G of her

complaint that she was incorporating all allegations previously set forth in her complaint (ECF

No. 8, ¶ 14, ¶ 22), the Court construes Plaintiff's hostile work environment claims to be based on

the alleged incidents involving Borjas as well as Stewart.

SWC argues that it is entitled to summary judgment on Plaintiff's hostile work environment claims for three reasons. (SWC Mot. 14-21)  First, as a preliminary matter, SWC contends that the alleged June 2009 exposure incident involving Stewart is time-barred under Title VII and the NMHRA, and therefore, cannot be considered by the Court in determining whether Plaintiff can withstand summary judgment on her hostile work environment claims. (SWC Mot. 14-16)  Second, SWC argues that even if the Court determines that the June 2009 exposure incident is timely, Stewart and Borjas's alleged conduct did not give rise to a sexually hostile work environment in violation of Title VII and the NMHRA. (SWC Mot. 16-20)  Third, SWC argues in the alternative, that if the Court determines that Plaintiff was subjected to a sexually hostile work environment, SWC is nevertheless entitled to summary judgment on the hostile work environment claims because there is no basis for holding SWC liable as a matter of law. (SWC Mot. 20-21)  The Court addresses each of these arguments in turn.

  i.   *Timeliness*

Title VII requires a plaintiff to file a claim "within three hundred days after the alleged unlawful practice occurred" in cases, such as this one, where the plaintiff first filed a charge of discrimination with a state agency.  *See* 42 U.S.C. § 2000e-5(e)(1).[7]  "The filing is a prerequisite to a civil suit under Title VII."  *Boyer v. Cordant Techs., Inc.*, 216 F.3d 1137, 1138 (10th Cir. 2003).  The NMHRA also requires complaints to be filed within "three hundred days after the alleged act was committed."  N.M. Stat. Ann. § 28-1-10(A).

---

[7] 42 U.S.C. § 2000e-5(e)(1) provides in relevant part that:
  in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred.

Plaintiff filed her charge of discrimination with the NMHRB on July 11, 2011. *See supra* note 5. Three hundred days prior to this date was September 14, 2010. It is undisputed by the parties that Plaintiff's claims arising from her allegations involving Borjas are timely since those incidents occurred in January and February 2011, well within the 300-day limitations period. However, SWC argues in its motion for summary judgment that Plaintiff's claims based on Stewart's alleged conduct are time-barred because Stewart exposed himself to Plaintiff sometime in June 2009, well before the 300-day limitation period commenced. (SWC Mot. 14-16) In other words, SWC contends that the June 2009 exposure incident involving Stewart is not part of the allegedly unlawful employment practice that resulted in a sexually hostile work environment because it occurred over a year before the 300-day limitations period commenced.

In *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the Supreme Court set forth the rule for applying Title VII's 300-day statutory limitation period to hostile work environment claims. In determining whether an actionable hostile work environment claim exists, the Supreme Court specified that "[a] court's task is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period." *Id.* at 120. The Court held that "[i]t does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 116; *see also id.* at 118 (reiterating that "the employee need only file a charge within . . . 300 days of *any act* that is part of the hostile work environment" in order for the charge to be considered timely (emphasis added)). Similarly, with regard to hostile work environment claims brought under the NMHRA,

the Supreme Court of New Mexico has adopted *Morgan* in evaluating time limitation issues.  *See*

*Ulibarr*i, 2006-NMSC-009, ¶ 11.

Based on *Morgan*, the Court's task in evaluating the timeliness of Plaintiff's hostile work

environment claims is to determine whether the specific incidents Plaintiff complains of are part

of the same actionable hostile environment claim.  *See Duncan v. Manager, Dep't of Safety, City*

*& County of Denver*, 397 F.3d 1300, 1309 (10th Cir. 2005).  Specifically, the Court examines

"the acts within the filing period and consider[s] whether incidents outside the filing period are

sufficiently related to constitute the same employment practice."  *See Tademy v. Union Pac.*

*Corp.*, 614 F.3d 1132, 1140 (10th Cir. 2008).  As the Tenth Circuit Court of Appeals noted in

*Duncan*, the Supreme Court emphasized in *Morgan* that "there must be a relationship between

acts alleged after the beginning of the filing period and the acts alleged before the filing period."

*See Duncan*, 397 F.3d at 1308.  In *Morgan*, the Supreme Court concluded that the pre- and post-

limitation period incidents in that case were sufficiently related, and thus part of the same

actionable hostile environment claim because they involved "the same type of employment

actions, occurred relatively frequently, and were perpetrated by the same managers."  536 U.S. at

120.

Plaintiff contends that the June 2009 exposure incident is timely because it is related to

other alleged conduct involving Stewart that occurred during the 300-day limitations period.[8] (Pl.

Resp. 23-25) With regard to conduct by Stewart during the 300-day limitations period, there is

no evidence in the record that Stewart exposed himself again to Plaintiff at any point during the

---

[8] Plaintiff has made timely claims against Borjas; however, she does not argue in her response
that the Stewart exposure incident is related to any of the Borjas incidents. (Pl. Resp. 23-25)
Indeed, such an argument would be futile under *Morgan* because these incidents involved
two different actors (Stewart and Borjas), were separated by a time gap of approximately 1.5 years
(June 2009 to January 2011), and varied in frequency.  *See Morgan*, 536 U.S. at 120.

300-day limitations period.  The only alleged conduct by Stewart during the 300-day limitations period that was directed against Plaintiff is her affidavit testimony that she remained fearful that Stewart would expose himself to her again and that Stewart "would go upstairs at SWC and sexually leer at [her] doing [her] work"[9] in a manner that made her "very uncomfortable" throughout the rest of her employment. (Pl. Aff. ¶ 7, ECF No. 47-1)  Plaintiff also relies on evidence in the record that Stewart exposed himself twice to another female employee during the 300-day limitations period.  Thus, the question before the Court thus is whether the Stewart exposure incident in June 2009 is sufficiently related to any of the timely incidents that Plaintiff has alleged such that all of the incidents can be considered part of the same actionable hostile work environment claim.

Plaintiff initially argues that the June 2009 exposure incident is timely because she remained fearful throughout the rest of her employment that Stewart would expose himself to her again. (*Id.* at 24)  The Court is not convinced by this argument because Plaintiff's fear of additional encounters was a consequence of the June 2009 exposure incident, and not a separate act of harassment that occurred within the 300-day limitations period.  *See Brown v. Unified Sch. Dist. 501, Topeka Pub. Schs.*, 465 F.3d 1184, 1187 (10th Cir. 2006) (stating that "when an initial discriminatory act is time-barred, a later related event is not actionable if it is merely a consequence of the first; to be actionable, the later event must involve an independent act of

---

[9] Plaintiff fails to explain in her affidavit what she meant by "sexually leer[ing]."  During her deposition, Plaintiff was asked:

  Q     After that particular [exposure] incident, did you ever have any other incidents
        involving Cody Stewart?
  A     Well, he was always when I was working at the towers, he was always upstairs;
        looking down.
  Q     Anything else?
  A     No, ma'am.
(Pl. Dep. 97:8-12, May 28, 2013, ECF No. 49-1).

discrimination"); *see also Jense v. Runyon*, 990 F. Supp. 1320, 1326-27 (D. Utah 1998) (fear of alleged harasser did not justify Postal Service employee's failure to timely file her sexual harassment complaint to outside Equal Employment Opportunity Commission counselor).

Plaintiff next contends that the Stewart exposure incident in June 2009 is timely because it was one of three incidents where Stewart allegedly exposed his genitals to SWC employees.[10] (*Id.* at 24-25) The summary judgment record includes the affidavit of one other female SWC employee, Lorena Chavez-Acosta, who states that Stewart exposed his genitals twice to her during a work shift sometime in October 2010. (Lorena Chavez-Acosta Aff. ¶ 4, ECF No. 47-2) Chavez-Acosta told Plaintiff about Stewart's conduct, *see id.*, and as such, Plaintiff was aware in October 2010—which fell within the 300-day limitations period—that Stewart had exposed himself to another employee. This evidence establishes that Stewart exposed himself to two female SWC employees—once before and twice during the 300-day limitations period. Although the incidents were identical in nature, all involving Stewart's physical act of exposing his genitals to other employees during working hours at the SWC production facility, only the untimely June 2009 exposure incident was directed against Plaintiff.  The critical question therefore is whether the June 2009 exposure incident is part of the same hostile work

---

[10] The Tenth Circuit Court of Appeals has recognized that an actionable hostile work environment claim can include evidence of conduct directed at other coworker(s) so long as the claimant was aware of the conduct during the time that he or she was allegedly subject to the hostile work environment.  *See Tademy*, 614 F.3d at 1146 (noting that evidence of a general work atmosphere, including evidence of harassment of other employees, may be considered in evaluating a hostile work environment claim as long as the plaintiff presents evidence that he or she knew about the offending behavior); *see also Hirase-Doi v. U.S. West Commc'ns, Inc.*, 61 F.3d 777, 782 (10th Cir. 1995) (stating that while "evidence of a general work atmosphere, including evidence of harassment of other women, may be considered in evaluating a [hostile work environment] claim," the claimant "may only rely on evidence relating to harassment of which she was aware during the time that she was allegedly subject to a hostile work environment") (overruled on other grounds).

environment as the two alleged exposure incidents involving Stewart that occurred during the 300-day limitations period.  Neither SWC nor Plaintiff has provided the Court with any authority or legal argument on the issue of whether alleged conduct directed against the plaintiff that occurred *before* the 300-day limitations period should be considered timely in hostile work environment claims where the plaintiff herself was not, but knew of other employees, who were subjected to similar or identical conduct *during* the 300-day limitations period.   Stated differently, is the Court required in Title VII hostile work environment cases to consider conduct that occurred months or even years before the 300-day limitations period began, simply because the claimant presents evidence that he or she was aware of identical incidents involving other employees that occurred during the 300-day limitations period?

The Court finds that *Morgan* is instructive on this question.  In *Morgan*, the petitioner alleged that he had been subject to a racially hostile work environment throughout his employment.  536 U.S. at 104; *see also id.* at n.4 (describing the petitioner's specific factual allegations).  While some of the conduct the petitioner complained about occurred within 300 days of the time that he filed his charge with the EEOC, several alleged acts took place prior to that time period.   *Id.* at 106.  In holding that the acts that fell outside the statutory time period were part of the same actionable hostile environment as the timely incidents, the Supreme Court relied in particular on the fact that petitioner had presented evidence "from a number of other employees" regarding conduct by managers that displayed racial animus and discrimination. *Id.* at 120.  The Court specifically stated:

> With respect to Morgan's hostile environment claim, the Court of Appeals concluded that the pre- and post-limitations period incidents involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers. To support his claims of a hostile environment, Morgan presented evidence from a number of other employees that managers made racial jokes, performed racially derogatory acts, made negative comments regarding the

> capacity of blacks to be supervisors, and used various racial epithets.  Although
> many of the acts upon which his claim depends occurred outside the 300 day
> filing period, we cannot say that they are not part of the same actionable hostile
> environment claim.

*Id.*  (alterations and internal citations omitted).  Based on *Morgan*, the Court determines that it will consider the timely exposure incident directed against Chavez-Acosta in evaluating the timeliness issue.  Thus, the final issue is whether the untimely June 2009 exposure incident directed against Plaintiff is part of the same hostile work environment as the following timely incidents that occurred during the 300-day limitations period: (1) Stewart going upstairs at SWC's production facility and sexually leering/looking down at Plaintiff and (2) Plaintiff's knowledge that Stewart exposed himself twice to Chavez-Acosta during a single shift in October 2010.

The Court concludes that the 2009 exposure incident is part of the same actionable hostile work environment practice as the timely incidents of Stewart exposing himself to Chavez-Acosta and Stewart's acts of "looking down" at Plaintiff or "sexually leer[ing]" at her while Plaintiff was at work.  The acts were related by type, were perpetrated by the same person, Stewart, and the exposure incidents were essentially identical in nature, separated only by time and the female employee at whom they were directed.  The Court determines that a rational jury could conclude that Stewart's alleged conduct in June 2009 was part of the same hostile work environment as those acts that occurred during the limitations period.  *See Duncan*, 397 F.3d at 1309 (concluding that acts of "threatening physical and psychological harassment" outside the limitations period were not part of the same hostile work environment as conduct within the limitations period involving "off-color comments and rumor-spreading perpetuated by a completely different set of actors" after a time gap of eighteen years.).

The Court will therefore consider Plaintiff's allegation that Stewart exposed himself to her in June 2009 in deciding whether summary judgment is appropriate on Plaintiff's hostile work environment claims under Title VII and the NMHRA.

ii.   *SWC's Arguments on the Merits of Plaintiff's Hostile Work Environment Claims*[11]

The Court turns now to consider SWC's argument that it is entitled to summary judgment as a matter of law on Plaintiff's hostile work environment claims.  A plaintiff "may make out a claim of sex discrimination based on a hostile work environment if she can show (1) that she was discriminated against because of her sex; and (2) that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of her employment and created an abusive working environment."  *Morris v. City of Colo. Springs*, 666 F.3d 654, 663 (10th Cir. 2012) (internal quotation marks omitted); *see also Harsco*, 475 F.3d at 1186.  Stated differently, to survive summary judgment, a plaintiff must show that a rational jury could find that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *See Morris*, 666 F.3d at 664 (internal citation and quotation marks omitted); *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotations and citations omitted).  "[There] is not, and by its nature cannot be, a mathematically precise test" for a hostile work environment claim.  *Harris*, 510 U.S. at 22.  Courts determine whether an actionable hostile work environment claim exists by looking at a totality of the circumstances, considering such factors as "the frequency of the discriminatory conduct; its severity; whether it

---

[11]  As indicated earlier in this opinion, the Court's analysis of Plaintiff's hostile work environment claim under the NMHRA is the same as its analysis of Plaintiff's hostile work environment claim under Title VII.  *See Ocana*, 2004-NMSC-018, ¶¶ 23-25 (applying federal law surrounding Title VII hostile work environment claims to interpret a hostile work environment claim brought under the NMHRA).

is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23.

In addition, the Court's analysis of a hostile work environment claim has both objective and subjective components—that is, a plaintiff is required to "show that the environment was both objectively and subjectively hostile or abusive." *Morris*, 666 F.3d at 664. The Court assesses "the objective severity of the harassment from the perspective of a reasonable person in the plaintiff's position." *Id.*; *See also Harris*, 510 U.S. at 21 (stating that "[c]onduct that is not severe or pervasive enough to create . . . an environment that a reasonable person would find hostile or abusive[] is beyond Title VII's purview."). Likewise, the Court considers if the plaintiff subjectively perceived the environment to be abusive. *Id.* at 21-22 (observing that "if the victim does not subjectively perceive the environment to be abusive, the conduct has not altered the conditions of the victim's employment, and there is no Title VII violation.").

Viewing the alleged incidents involving Borjas and Stewart in the light most favorable to Plaintiff, the Court concludes that the incidents fail to give rise to an actionable claim of a sexually hostile work environment under Title VII and the NMHRA for the reasons set forth below.

Initially, the Court determines that the majority of incidents involving Borjas were not due to Plaintiff's gender. In order to establish that a sexually hostile work environment existed, Plaintiff was required to establish that Borjas's conduct was based on her gender. "[T]he critical issue in determining whether harassment is because of sex is whether members of one sex are subjected to a disadvantage to which the other is not." *See Harsco*, 475 F.3d at 1186. Plaintiff "could have proved this element through at least two evidentiary routes: first, the inference is 'easy to draw' if the harasser and the harassed employee are of opposite sex, at least when the

conduct at issue involves explicit or implicit proposals of sexual activity; and second, a plaintiff may prove that the harasser treats men and women differently in the workplace." *Id.*  In this case, Plaintiff's claims of inappropriate conduct by Borjas consist of Borjas asking Plaintiff why she was so quiet in a work hallway on one occasion, calling her into his office multiple times for non-legitimate work reasons, staring provocatively at her, and standing uncomfortably close to her.  The Court determines that a number of these incidents were not overtly or implicitly based on Plaintiff's gender such that they gave rise to a sexually hostile work environment. Specifically, the Court is not convinced that Borjas would not have made the hallway remark asking why she was so quiet but for Plaintiff's gender.  The Court is likewise not persuaded that Borjas called Plaintiff into his office multiple times due to her gender—in fact, Plaintiff testified in her deposition that Borjas only asked her work-related questions while she was in his office and that he never asked her to do anything for him that was not work-related.  And significantly, there is no evidence of explicit or implicit proposals of sexual activity by Borjas—as Plaintiff stated, Borjas never told her that he was interested in a relationship, never touched her or asked her out on a date, and never asked her to kiss him or touch him. (Pl. Dep. 108:24-25; 109:5-14; 116:3-7 (ECF No. 45-1))  Nor is there any evidence in the record that Borjas treated male employees differently than female employees in the workplace.  Thus, the foregoing incidents cannot form the basis of Title VII liability due to a hostile work environment. *See Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1263 (10th Cir. 1998) (explaining that "[i]f the nature of an employee's environment, however unpleasant, is not due to her gender, she has not been the victim of sex discrimination as a result of that environment").

Next, while some of Borjas's conduct may have been motivated by Plaintiff's gender— i.e., his alleged general flirtatious behavior, his standing uncomfortably close to Plaintiff and

staring provocatively at her—the Court concludes that these acts were not severe or pervasive enough to give rise to a sexually hostile work environment.  As the Tenth Circuit Court of Appeals has emphasized, Title VII is not a "general civility code for the American workplace," *Harsco*, 475 F.3d at 1186, and "[a] line must be drawn between actionable conduct and conduct that is merely insensitive, tasteless, or vulgar." *See Bertsch v. Overstock.com*, 684 F.3d 1023, 1028 (10th Cir. 2012).  "Title VII's mandate is not to ensure workplace harmony or create a finishing school." *Id.*  Viewing Borjas's gender-based conduct in light of foregoing, the Court determines that while the conduct may have been unpleasant and insensitive, it was not objectively severe enough as to alter the very terms and conditions of Plaintiff's employment.

Likewise, the Court determines that Stewart's acts of exposing himself to Plaintiff and Chavez-Acosta, as well as his sexually leering at Plaintiff were not severe enough to give rise to a hostile work environment, despite the fact that Stewart's conduct was undoubtedly vulgar and offensive.  Moreover, the combination of Borjas's conduct along with the Stewart exposure incidents was not severe or pervasive enough to give rise to a sexually hostile work environment. The Court notes that approximately 16 months elapsed between the June 2009 exposure incident directed at Plaintiff, which was a single incident lasting less than thirty seconds, and the Stewart exposure incident directed at Chavez-Acosta.  The Borjas conduct occurred 3-4 months after the second exposure incident.  Accordingly, all of the conduct at issue, occurred over a period of approximately 20 months.  The Court concludes that the incidents were too few and far between to be considered pervasive enough to alter the terms and conditions of Plaintiff's employment. *See Penry*, 155 F.3d at 1263 (holding that gender-based incidents of inappropriate comments over a three-year period and offensive touchings were too few and far between to be considered severe or pervasive enough so as to alter the conditions of the victims' employment).

Under the totality of the circumstances, the Court is unable to conclude that a rational jury could find that Plaintiff was subjected to a sexually hostile work environment. *See, e.g.,* *Hearron v. Voith Indus. Servs., Inc.*, 483 F. App'x 453, 454-55 (10th Cir. 2012) (holding that plaintiff's allegations that supervisor was overly friendly and flirtatious, shared his personal business with her, and once grabbed her and patted her on her buttocks, stating that she needed a spanking, were not severe enough to support a hostile work environment claim under Title VII) (unpublished)[12]; *Carrasco v. Boeing Co.*, 190 F. App'x 650, 654-55 (10th Cir. 2006) (holding that plaintiff's allegations that her supervisor, during a one-year period, made four harassing statements—including asking if he could measure her shorts from the inside of her thigh, asking whether she tanned naked, whispering in her ear that he liked her haircut, and asking her if he could see her thong underwear—were insufficiently severe or pervasive so as to create a hostile work environment) (unpublished); *Ulibarri*, 2006-NMSC-009, ¶ 13 (holding that a supervisor's acts of repeatedly telling the plaintiff she was attractive and once asking her if she as interested in a relationship were not sufficiently severe and pervasive enough to support her hostile work environment claim under the NMHRA); *Cf. Rogers v. City Cnty. Health Dep't of Okla. Cnty.*, 30 F. App'x 883, 887 (10th Cir. 2002) (holding that a supervisor's conduct was sufficiently severe and threatening enough to support a hostile work environment claim where the supervisor

---

[12] The Court relies upon *Hearron* and other unpublished opinions in ruling on SWC's motion for summary judgment.  The Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  *See* 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored . . . .  However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision."  *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court finds that the unpublished opinions it has cited have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

grabbed the plaintiff's neck and forcibly kissed her when she went to speak with him regarding work issues on two occasions) (unpublished); *Cf. Ocana*, 2004-NMSC-018, ¶ 25 (concluding that a prima facie case of a sexually hostile work environment was established under the NMHRA where store general manager always followed plaintiff around, approached her when she was alone, stared at her and touched himself in a sexually suggestive manner, stood near her, parked next to her car even though he had a designated area, and rubbed up against her with an erection on one occasion).

In light of the Court's holding, the Court need not reach SWC's liability argument. (SWC Mot. 20-21) The Court grants summary judgment in favor of SWC on Plaintiff's hostile work environment claims under Title VII and the NMHRA.

b. Quid Pro Quo Sexual Harassment Claim

In Section G of her complaint, Plaintiff raises a quid pro quo sexual harassment claim under Title VII, alleging that she was terminated from her position for rejecting Borjas's sexual advances. (ECF No. 8, ¶ 25)  "The gravamen of a *quid pro quo* sexual harassment claim is that tangible job benefits are conditioned on an employee's submission to conduct of a sexual nature and that adverse job consequences result from the employee's refusal to submit to the conduct." *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1414 (10th Cir. 1987).

SWC contends that it is entitled to summary judgment on Plaintiff's quid pro quo sexual harassment claim, arguing that Plaintiff was not subjected to sexual advances by Borjas and consequently, there were no concrete employment benefits conditioned on Plaintiff's submission to conduct of a sexual nature.[13] (SWC Mot. 22)  In response to SWC's argument, Plaintiff

---

[13] SWC also asserts in a footnote that it is entitled to summary judgment on this claim because Borjas lacked supervisory authority to terminate or otherwise alter Plaintiff's terms and conditions of employment.  (SWC Mot. 22)  The Court does not reach this argument.

contends that Borjas subjected Plaintiff to conduct of a sexual nature, pointing specifically to her affidavit statements that Borjas approached her in a "flirtatious manner" in the hallway on one occasion, became "obsessive towards [her]," stared at her in a "sexually provocative manner," stood uncomfortably close to her, and made her employment "miserable in retaliation for [her] refusal to accept his flirtations." (Pl. Resp. 32-33)  Plaintiff also alleges that Borjas wrote her up for frivolous reasons and that her refusal to accept Borjas's alleged sexual advances occurred in close temporal proximity to the termination of her employment.  (*Id.*)

Viewing the evidence and all reasonable inferences therefrom in the light most favorable to Plaintiff, the Court concludes that summary judgment is appropriate on Plaintiff's quid pro quo sexual harassment claim because there is no evidence in the record showing that Borjas conditioned tangible employment benefits on Plaintiff's submission to alleged sexual conduct and then had her fired or written up when she refused to comply.  *See Hicks*, 833 F.2d at 1413 (emphasizing that "*[q]uid pro quo* harassment occurs when submission to sexual conduct is made a condition of concrete employment benefits").  Initially, the Court agrees with SWC's argument that Plaintiff was not subjected to conduct of a sexual nature by Borjas.  Although Plaintiff points to her affidavit statements described above to argue that Borjas made alleged sexual advances, Plaintiff also specifically testified at her deposition that Borjas never touched her or asked her out on a date, (Pl. Dep. at 108:24-25, 109:1-7, ECF No. 45-1), that he never asked Plaintiff to kiss him, touch him, or to do anything for him that was not work-related, (*Id.* at 109:8-14), and that she never asked him to step away or told him that he was standing too close to her. (*Id.* at 114:5-25)  She also stated that Borjas never verbally told her that he was interested in a relationship. (*Id.* at 116:3-7)  Under the totality of the circumstances, the Court concludes that Borjas's alleged conduct was not of a sexual nature and that he did not attempt to groom

Plaintiff for sexual favors. *See Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1060 (10th Cir. 2009) (affirming summary judgment on quid pro quo sexual harassment claim where the record failed to show that the plaintiff's employment was conditioned on sexual favors, the plaintiff admitted that her supervisor never asked her for sex, and the plaintiff denied that the supervisor manufactured bad work evaluations so that he would be able to sexually harass her).

Second, and more importantly, even if the Court were to accept Plaintiff's argument that she was subjected to sexual advances by Borjas, the Court concludes that Plaintiff has failed to set forth any evidence showing that Borjas conditioned employment benefits on Plaintiff's acquiescence to the alleged sexual advances. In other words, there is simply no evidence in the record showing that Borjas ever indicated to Plaintiff that she would receive certain employment benefits if she agreed to any of his alleged sexual advances or that he told Plaintiff she would suffer adverse job consequences if she refused to comply. *See Burns v. Snow*, 130 F. App'x 973, 984 (10th Cir. 2005) (holding that summary judgment was appropriate on quid pro quo sexual harassment claim where the plaintiff failed to show that "she was promised tangible job benefits if she dated [her supervisors] or experienced reprisal when she refused to have a relationship with them.") (unpublished); *see also Pinkerton*, 563 F.3d at 1060-61 (affirming summary judgment on quid pro quo sexual harassment claim where the record failed to show that the plaintiff's employment was conditioned on sexual favors).

Moreover, although Plaintiff points to evidence of negative employment actions taken against her—the written and verbal reprimands for performance and attendance-related issues as well as her ultimate termination from her position—there is no evidence suggesting that these employment actions were connected to any of the sexual demands that she alleges were made by Borjas. *See Rogers*, 30 F. App'x at 887-88 (affirming the district court's holding that the

employee failed to establish a prima facie case of quid pro quo sexual harassment where although undisputed evidence showed that the employee's supervisor had subjected her to unwanted intimate physical contact, there was no evidence that the supervisor subjected plaintiff to any adverse job consequences because she refused to submit to his sexual advances). Plaintiff merely speculates but provides no evidence showing that the negative performance evaluations issued by Borjas to her were generated to secure sexual favors. *See Pinkerton*, 563 F.3d at 1060 (rejecting the plaintiff's argument that her supervisor issued negative performance evaluations to her in order to groom the plaintiff for sexual favors and then fired her for refusing to comply where the undisputed evidence showed that the negative evaluations were warranted and the plaintiff had a prior history of performance issues). In addition, the Court notes that SWC presented undisputed evidence that Plaintiff was terminated on the same day that she committed an error that resulted in the loss of significant product and that she had previously received twelve write-ups for performance failures and attendance issues between April 2010 and February 2011. (Miller Aff. ¶¶ 7-8); *see Burns*, 130 F. App'x at 984 (indicating that "[a]n employer may refute a *quid pro quo* harassment claim by . . . establishing it made the termination decision for legitimate business reasons and not because the employee refused to submit to sexual demands."). Although Plaintiff argues that she suffered quid pro quo sexual harassment because her termination was close in time to Borjas's alleged conduct, she does not dispute that she had a history of prior write-ups for performance related issues and that she was fired after committing the performance-related error that resulted in the loss of product. The Court concludes that the temporal proximity alone between Borjas's alleged conduct and Plaintiff's termination is not sufficient to survive summary judgment under the facts of this case. *See Helm v. Kansas*, 656 F.3d 1277, 1287 (10th Cir. 2011) (stating that "a plaintiff cannot show that a

supervisor's harassment 'culminated' in a tangible employment action [such as discharge] merely by demonstrating that the tangible employment action followed the harassment.  Rather, the plaintiff must establish a strong causal nexus between the supervisor's harassment and the tangible employment action.") (internal citation omitted).

The Court will therefore grant summary judgment in favor of SWC on Plaintiff's quid pro quo sexual harassment claim under Title VII.

c.   Plaintiff's Retaliation Claim under the NMHRA

In Section F of her amended complaint alleging violations of the NMHRA, Plaintiff asserted that SWC "illegally retaliated against [her] by terminating her because she rejected her supervisor's [Borjas's][14] unwanted sexual advances." (ECF No. 8, ¶ 17)  SWC treats the foregoing in its motion for summary judgment as sufficiently raising a retaliation claim under the NMHRA. (SWC Mot. 23-24)  SWC contends that it is entitled to summary judgment on this claim, arguing that Plaintiff did not engage in protected activity and her termination was solely for performance and attendance issues. (*Id.*)

The NMHRA makes it unlawful for an employer to retaliate against "any person who has opposed any unlawful discriminatory practice."  Section 28-1-7(I)(2).  To prove a prima facie case of retaliation under the NMHRA, Plaintiff is required to show that: "(1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between these two events."  *Ocana*, 2004-NMSC-018, ¶ 33.  SWC primarily argues in its motion for summary judgment that Plaintiff failed to prove that she engaged in protected

---

[14] The Court concludes that Plaintiff is referring here to the alleged conduct by Borjas based on the remaining claims set forth in Section F of Plaintiff's amended complaint.

activity with respect to Borjas's alleged conduct.[15]  In *Ocana*, the New Mexico Supreme Court described the nature of an employee's opposition to an unlawful discriminatory practice required to meet the protected activity element of NMHRA retaliation claims, stating that an employee's opposition to an unlawful employment practice can take many forms including "formal complaints[] as well as informal protests of discriminatory employment practices, including making complaints to management . . . ."  *Id.* at ¶ 35 (alterations and internal quotation marks omitted).  Regardless of how a plaintiff complains to his or her employer, "the employee's communications must sufficiently convey the employee's reasonable concerns that the employer has acted or is acting in an unlawful discriminatory manner."  *Id.* (internal citation omitted).  Of relevance to this case, if the employee's communications or reports to his/her employer *do not* mention a specific act of discrimination, "the employer *must* be able to discern from the context of the statement that the employee opposes an allegedly unlawful employment practice."  *Id.* (emphasis added and internal citation omitted).

The Court determines that summary judgment is proper on Plaintiff's retaliation claim because the evidence establishes that Plaintiff did not engage in protected activity.  Specifically, it is undisputed that Plaintiff did not file a formal complaint with SWC regarding any alleged unlawful employment practices involving Borjas.  *See Ulibarri*, 2006-NMSC-009, ¶ 16 (holding that the employee engaged in protected activity by reporting what she believed to be harassment to her employer).  Likewise, although Plaintiff states that she complained of Borjas's conduct to SWC supervisors and requested a shift change due to Borjas's behavior, Plaintiff admitted that she did not mention any of Borjas's alleged specific discriminatory acts to SWC management or

---

[15] Although the parties dispute whether Borjas had supervisory authority over Plaintiff, (SWC Mot. 22-24, Pl. Resp. 33), the Court assumes without deciding that Borjas was Plaintiff's supervisor for purposes of its analysis because Borjas's supervisory status, or lack thereof, does not affect the Court's ruling on this claim.

other SWC employees.[16]  Rather, she only told these individuals that she was "sick of" Borjas or that she wanted to move to a different shift because Borjas was making her job "miserable." (Pl. Dep. 117:6-20, 118:1-5, 20-25, 119:1-6, 17-25, 120:1-25 (ECF No. 45-1))  The Court concludes that Plaintiff's complaints that she was "sick of" Borjas or that he was making her job "miserable" were not sufficient to put SWC on notice that Borjas had "acted or [was] acting in an unlawful discriminatory manner" or that he was engaging in an allegedly unlawful employment practice that Plaintiff opposed.  *See also Ocana*, 2004-NMSC-018, ¶¶ 34-35 (holding that plaintiff's complaint to someone who was not her manager of alleged sexual harassment was insufficient to put the employer on notice of illegal employment practice); *see also Ulibarri*, 2006-NMSC-009, ¶ 16 (determining that the employee engaged in protected activity where she specifically reported to her supervisor that an academy director had propositioned her).  The Court will therefore grant summary judgment in favor of SWC on Plaintiff's retaliation claim to the extent that such a claim was raised in Plaintiff's complaint.

### 3.  *Plaintiff's State Law Claims for Intentional Infliction of Emotional Distress, Negligent Supervision, and Breach of Contract*

As a final matter, SWC argues that it is entitled to summary judgment on Plaintiff's claims under New Mexico law for breach of contract (Section H), intentional infliction of emotional distress (Section I), and negligent supervision (Section J). (SWC Mot. 24-29)  Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction."  "When all federal

---

[16]  In her deposition, Plaintiff stated that: (1) she never complained to anyone in Human Resources about the exchange in the hallway where Borjas asked Plaintiff why she was so quiet; (Pl. Dep. 111:9-17, ECF No. 45-1); (2) she never complained to anyone about Borjas's frequent stares (Pl. Dep. 113:21-23, ECF No. 45-1); and (3) she never talked to anyone in Human Resources or SWC management about the fact that Borjas stood too close to her at times (Pl. Dep. 115:3-10, ECF No. 45-1).

claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (internal citation omitted).

The Court has granted summary judgment in favor of SWC on Plaintiff's federal and NMHRA claims, and therefore, the only claims remaining in this action are Plaintiff's state law claims for breach of contract, intentional infliction of emotional distress, and negligent supervision. Having disposed of all of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction as to these claims. Accordingly, Plaintiff's claims for breach of contract, intentional infliction of emotional distress, and negligent supervision are remanded to the Ninth Judicial District Court for the State of New Mexico.

C.    **CONCLUSION**

The Court grants SWC's motion for summary judgment as to Plaintiff's claims under Title VII as well as her claims under the NMHRA;

IT IS HEREBY ORDERED that Plaintiff's claims under Title VII and the NMHRA are dismissed with prejudice;

IT IS FURTHER ORDERED that Plaintiff's remaining state law claims for breach of contract, intentional infliction of emotional distress, and negligent supervision are remanded to the Ninth Judicial District Court for the State of New Mexico.

_____
SENIOR UNITED STATES DISTRICT JUDGE