IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

YVONNE MACIAS,

    Plaintiff,

v.                                                    No. CIV 12-350 JAP/WPL

SOUTHWEST CHEESE COMPANY, LLC,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

This lawsuit centers on Plaintiff Yvonne Macias's claims that she was sexually harassed by two of her male colleagues – Cody Stewart and Jose Borjas – while working for Defendant Southwest Cheese Company, LLC. Over two years ago, Defendant moved for summary judgment on all of Plaintiff's claims, including Plaintiff's state law claims for breach of an implied employment contract, intentional infliction of emotional distress, and negligent supervision. *See* DEFENDANT SOUTHWEST CHEESE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT (Doc. No. 45) ("Defendant's MSJ"). After reviewing the evidence, the Court granted summary judgment in Defendant's favor on Plaintiff's federal claims and remanded the state law claims to state court. *See* MEMORANDUM OPINION AND ORDER (Doc. No. 61). Plaintiff appealed. *See* NOTICE OF APPEAL (Doc. No. 63). On August 24, 2015, the Court of Appeals for the Tenth Circuit issued an order affirming the dismissal of Plaintiff's quid pro quo sexual harassment claim and Plaintiff's retaliation claim, but reversing the dismissal of Plaintiff's hostile work environment claim. *Macias v. Southwest Cheese Co., LLC*, Nos. 14-2109 & 14-2154, 2015 U.S. App. LEXIS 14832 (10th Cir. Aug. 24, 2015) (unpublished). In light of this ruling, the Tenth Circuit vacated this Court's decision to decline supplemental jurisdiction over Plaintiff's state law claims. The Tenth

1

Circuit did not, however, express any opinion about the merits of these claims. *See generally id.* Thus, Defendant's motion for summary judgment on the state law claims remains unresolved.

On October 27, 2015, with the Court's permission, Defendant filed a supplemental brief asking the Court to grant summary judgment in its favor on Plaintiff's state law claims. *See* DEFENDANT SOUTHWEST CHEESE COMPANY LLC'S SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DE45] (Doc. No. 100) ("Defendant's Supplemental Brief"). Plaintiff filed a response in opposition. *See* PLAINTIFF YVONNE MACIAS'S RESPONSE TO "DEFENDANT SOUTHWEST CHEESE COMPANY L.L.C'S SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DE 45]" AND MEMORANDUM IN OPPOSITION (Doc. No. 105) ("Plaintiff's Supplemental Brief"). For the reasons discussed below, the Court will grant in part and deny in part Defendant's request for summary judgment on Plaintiff's state law claims.[1]

## I.   Background

Plaintiff Yvonne Macias began working for Defendant Southwest Cheese Company, LLC in February 2009. Plaintiff's Affidavit, Exhibit 1 to Response (Doc. No. 47-1) ("Plaintiff's Affidavit") ¶ 2. Ms. Macias maintains that two male Southwest Cheese employees sexually harassed her during her following two years of employment. First, in June 2009, Cody Stewart – a Southwest Cheese Assistant Team Leader – allegedly exposed his genitals to Ms. Macias and another female employee. *Id.* ¶ 6. Ms. Macias contends that she reported this incident to a shift supervisor, but nothing was done. *Id.* ¶¶ 6, 21. Mr. Stewart remained employed by Southwest

---

[1] In reaching this decision, in addition to considering the parties' supplemental briefing, the Court read and considered the original summary judgment briefing. *See* Defendant's MSJ; PLAINTIFF YVONNE MACIAS' RESPONSE TO "DEFENDANT SOUTHWEST CHEESE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT (Doc. No. 47) ("Response"); and DEFENDANT SOUTHWEST CHEESE COMPANY'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (Doc. No. 48).

Cheese and would leer at Ms. Macias in a sexual manner while at work. *Id.* ¶ 7. Second, according to Ms. Macias, starting in January 2011, Jose Borjas, a Southwest Cheese shift supervisor, started acting obsessively towards her. *Id.* ¶ 8. When Ms. Macias failed to reciprocate his attentions, Mr. Borjas allegedly began calling Ms. Macias to his office without cause, standing close to her, and staring at her in a provocative manner. *Id.* On February 8, 2011, Southwest Cheese discharged Ms. Macias after she had accumulated twelve disciplinary actions. *Id.* ¶ 20; Affidavit of Brenda Miller, Exhibit B to Defendant's MSJ (Doc. No. 45-1) ¶ 7. The prior court rulings contain additional details regarding Ms. Macias's employment with Southwest Cheese and the alleged harassment. *See* MEMORANDUM OPINION AND ORDER (Doc. No. 61); *Macias*, 2015 U.S. App. LEXIS 14832. The Court adopts, by reference, the facts set out in these opinions for the purpose of ruling on Defendant's motion for summary judgment.

## II. Standard of Review

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The party seeking summary judgment bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation marks omitted). Once the movant meets this burden, Rule 56 requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). In considering a motion for summary judgment, then, the Court's "role is simply to

determine whether the evidence proffered by plaintiff would be sufficient, if believed by the ultimate factfinder, to sustain her claim." *Foster v. Alliedsignal, Inc.*, 293 F.3d 1187, 1195 (10th Cir. 2002).

### III. Discussion

#### A. Breach of Contract

Plaintiff claims she had an implied employment contract with Southwest Cheese which Southwest Cheese breached when it fired her without good cause. In New Mexico, the general rule is that employment is terminable at will absent an express contractual provision to the contrary. *Garrity v. Overland Sheepskin Co. of Taos*, 1996-NMSC-032, ¶ 10, 121 N.M. 710; *Hartbarger v. Frank Paxton Co.*, 1993-NMSC-029, ¶ 4, 115 N.M. 665. There is, however, a big exception. An employer may not fire an employee at will "when there is an implied contract arising out of an employer's promise not to fire an employee except for just cause." *Garrity*, 1996-NMSC-032, ¶ 10. Under this doctrine, even if an employer does not intend to create an obligation to retain its employees, the "employer may be bound by . . . words or conduct that support a reasonable expectation on the part of employees that they will be dismissed only in accordance with specified procedures or for specified reasons." *Mealand v. E. N.M. Med. Ctr.*, 2001-NMCA-089131, ¶ 9, 131 N.M. 65.

The test for determining whether an employer has formed an implied employment contract is objective; the court asks whether the employer has created a reasonable expectation of continued employment. *Id.*; *see also Hartbarger*, 1993-NMSC-029, ¶ 14. For the answer to this question to be "yes," the employer must have made promises, either through written or oral representations, conduct, or a combination of both, that are definite, specific, or explicit. *Hartbarger*, 1993-NMSC-029, ¶ 14. Whether this has occurred is generally a question of fact

that is submitted to the jury. *Mealand*, 2001-NMCA-089131, ¶ 9. However, "because an employee's expectation based on an employer's words or conduct must meet a certain threshold of objectivity, an employer may be entitled to judgment as a matter of law if the employee's expectations are not objectively reasonable." *West v. Wash. Tru Solutions, LLC*, 2010-NMCA-001147, ¶ 7, 147 N.M. 424.

Southwest Cheese argues that the Court should enter summary judgment on Plaintiff's breach of an implied contract claim because Plaintiff has not produced sufficient evidence that "she had anything other than an at-will employment contract." Defendant's Supplement Brief at 6. Southwest Cheese points out that the Employee Handbook and Plaintiff's employment offer letter both state that Plaintiff was an at-will employee. As Southwest Cheese emphasizes, the disclaimers in these documents are inescapable and strongly worded. For example, Plaintiff's offer letter reads:

> Employment with Southwest Cheese Company LLC is on an at-will basis. This means that the employment relationship may be terminated by either the employee or the company at any time, with or without notice, and for any reason not expressly prohibited by law. Nothing in this memo or in any document or statement will limit the right to terminate employment at-will. No manager, supervisor or employee has any authority to enter into any agreement for employment for any specified period of time or to make any agreement for employment other than at-will. Only the President/CEO of Southwest Cheese Company LLC has the authority to make any such agreement and then only in writing.

Plaintiff's Offer Letter, Exhibit A-4 to Defendant's MSJ (Doc. No. 45-1). Similarly, Southwest Cheese's Employee Handbook, which Plaintiff received, repeatedly warns that "[e]ither the employee or the company may terminate the employment relationship at any time and for any reason." SWC Employee Handbook, Exhibit A-3 to Defendant's MSJ (Doc. No. 45-1) at 14-15, 20. It specifically explains that "[n]o employee or other representative of the company, other than the CEO has any authority to enter into an agreement for employment for any specified

period of time, or to make any agreement contrary to the foregoing. Any such agreement must be in writing and signed by both the employee and the CEO." *Id.* at 14. In her deposition, Plaintiff acknowledged that she was aware of these "at-will" statements when she began working at Southwest Cheese. Plaintiff's Deposition, Exhibit C to Defendant's MSJ (Doc. No. 45-1) at 54-57.

Nevertheless, Plaintiff claims that Southwest Cheese's progressive discipline policy led her to reasonably believe she would only be fired for just cause. She attests that Brenda Miller, the Southwest Cheese Human Resources Director, told her that she would be on ninety days probation, after which she "could only be terminated with advanced written notice, for good cause associated with [her] work with the right to a grievance." Plaintiff's Affidavit ¶ 4. To support her claim that she reasonably relied on this oral representation, Plaintiff has provided the Court with statements from other Southwest Cheese employees confirming that Southwest Cheese had a practice of using progressive discipline and only firing employees after issuing three warnings. Affidavit of Rebecca Martinez, Exhibit 3 to Response (Doc. No. 47-3) ¶¶ 3-4; Deposition of Cody Stewart, Exhibit 10 to Response (Doc. No. 47-10) at 7:7-8:9; Deposition of Unnamed Southwest Cheese Employee, Exhibit 11 to Response (Doc. No. 47-11) at 11:13-23, 57:2-18. The issue in this case is whether, when viewed in the light most favorable to Plaintiff, Ms. Miller's pledge and Southwest Cheese's practice of using progressive discipline create a genuine issue of material fact regarding the objective reasonableness of Plaintiff's belief that she would only be fired for cause.

The Court admits this is a close question. New Mexico courts have held that written disclaimers, such as those on which Southwest Cheese relies in requesting summary judgment, are not necessarily conclusive proof of an at-will relationship where the employer has also made

contrary representations regarding its termination procedures. *See Beggs v. City of Portales*, 2009-NMSC-023, ¶ 20, 146 N.M. 372 ("[E]ven where a personnel manual purports to disclaim any intentions of forming contractual obligations enforceable against an employer, a fact finder may still look to the totality of the parties' statements and actions, including the contents of a personnel manual, to determine whether contractual obligations were created."); *Mealand,* 2001-NMCA-089, ¶ 11 ("Reliance on disclaimers and qualifying words and phrases to negate expectations generated by other statements can be risky; courts have declined to give dispositive effect to disclaimers, reasoning that a combination of disclaimers and promissory statements on the same subject results in a question of fact for the jury."). In each case, the court must consider the relative strength of the competing representations to determine whether the employee has presented sufficient evidence for a reasonable fact-finder to conclude that an implied contract was established.

Here, the number, strength, and specificity of the written disclaimers bolster Defendant's argument that the Court should grant summary judgment in its favor. As previously discussed, Southwest Cheese's offer letter and Employee Handbook clearly informed Plaintiff that her employment contract would remain at-will unless the President or CEO modified the contract in writing. In a recent case, the Tenth Circuit ruled that unequivocal disclaimers of this nature would preclude an objectively reasonable employee from believing that a supervisor's statements and conduct created an implied employment contract. *Chavez-Acosta v. Southwest Cheese Co.*, LLC, 610 F. App'x 722, 733 (10th Cir. 2015) (unpublished). Notably, *Chavez-Acosta* involved a breach of an implied contract claim by another Southwest Cheese employee. *Id.* at 724. Thus, the facts of that case are nearly identical to the facts presently before the Court, *see generally id.,* and its holding has significant persuasive value. As in *Chavez-Acosta*, Southwest Cheese is entitled

7

to summary judgment on Plaintiff's breach of an implied contract claim because Southwest Cheese's unambiguous policy disallowing oral modifications of the at-will employment relationship is "more than enough to make unreasonable" Plaintiff's reliance on the words and conduct of the supervisor that purported to modify her employment status. *See id.* at 733. Plaintiff has made no effort to distinguish *Chavez-Acosta* or explain why the Court should reach a different outcome in this case. The Court will, therefore, grant summary judgment in Defendant's favor on Plaintiff's breach of contract claim.

## B. Intentional Infliction of Emotional Distress

New Mexico courts follow the approach used in the Restatement (Second) of Torts § 46 (1965) for defining and analyzing intentional infliction of emotional distress claims. To recover on a claim for intentional infliction of emotional distress, a plaintiff must show that (1) the conduct in question was extreme and outrageous; (2) the conduct was intentional or in reckless disregard of the effects on the plaintiff; (3) the plaintiff's mental distress was extreme and severe; and (4) there is a causal connection between the defendant's conduct and the plaintiff's distress. *Trujillo v. Northern Rio Arriba Elec. Co-op, Inc.*, 2002 -NMSC- 004, ¶ 25, 131 N.M. 607. Conduct qualifies as extreme and outrageous when it is so extreme in degree and so outrageous in character "as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* Similarly, distress qualifies as severe if no reasonable person, normally constituted, could be expected to endure it. *Id.*

In this case, Plaintiff argues that Southwest Cheese is liable for intentional infliction of emotional distress because (1) one of its employees, Cody Stewart, exposed himself to Plaintiff in June 2009, (2) Southwest Cheese knew about Mr. Stewart's propensity for public exposure because Mr. Stewart had photographed his genitals and passed the picture around at a work-

sponsored party in November 2008, (3) nevertheless, when Plaintiff and another employee reported the June 2009 incident to a shift supervisor, Southwest Cheese failed to take any corrective action, (4) Mr. Stewart remained employed at Southwest Cheese and regularly leered at Plaintiff in a sexual manner, and (5) due to this series of events, throughout the rest of her employment, Plaintiff was afraid, on a daily basis, that Mr. Stewart would expose himself again or attempt to sexually assault her. Plaintiff's Supplemental Brief at 14-15 (citing Plaintiff's Affidavit ¶¶ 6-7; Affidavit of Margarita Holguin, Exhibit 4 to Response (Doc. No. 47-4) ¶ 3-4; and Affidavit of Sarah Stewart, Exhibit 5 to Response (Doc. No. 47-5) ¶ 3). Defendant argues that there are two fatal flaws in Plaintiff's claim: (1) Southwest Cheese did not act with the intent to cause Plaintiff emotional distress and (2) Plaintiff did not suffer severe emotional distress.[2] Defendant's Supplemental Brief at 10-11.

Plaintiff responds to the first argument by summarizing the facts and clarifying that intent to cause severe emotional distress is not a prerequisite to recovery under New Mexico law. Plaintiff's Supplemental Brief at 13-14. This is, of course, correct. Even if Southwest Cheese did not act with the intent to cause Plaintiff harm, a jury could find in Plaintiff's favor on the basis that Southwest Cheese acted in reckless disregard of the effects its conduct would have on

---

[2] By focusing exclusively on intent and harm, Defendant effectively concedes that its alleged misconduct –continuing to employ Mr. Stewart despite reports that he exposed himself to Plaintiff – is egregious enough for a jury to impose liability under New Mexico law. The Court notes that there are strong reasons to send this issue to the jury. Defendant's alleged misconduct is comparable to other conduct courts have found to be extreme and outrageous. *See Baldonado*, 2008-NMSC-005, ¶ 36 (in light of its special duties to coordinate with firefighters, a gas company's failure to properly maintain gas pipes despite previous explosions was extreme and outrageous); *Stock v. Grantham*, 1998-NMCA-081, ¶ 35, 125 N.M. 564 (depending on the manner in which it was conducted, parents' act of firing their nanny while she was in hospital may be extreme and outrageous); *Dominguez v. Stone*, 1981-NMCA-146, ¶¶ 17-18, 97 N.M. 211 (holding that there was a triable issue regarding the outrageousness of the defendant's conduct when defendant made statements that plaintiff was not suited for employment because she was a Mexican and interrogated plaintiff at a public meeting concerning payment taxes, possession of a green card, citizenship, and voter registration). Additionally, if reasonable minds can differ about whether a defendant's conduct is extreme and outrageous, the issue must be sent to the jury. *Trujillo*, 2002 -NMSC-004, ¶ 26.

Plaintiff's emotional well-being. *See Baldonado v. El Paso Natural Gas Co.*, 2008-NMSC-005, ¶ 22, 143 N.M. 288 ("[I]ntentional infliction of emotional distress. . . requires a showing of reckless or intentional conduct on Defendant's part."). Specifically, a reasonable jury could find that Defendant acted recklessly when it failed to intervene after Plaintiff reported Mr. Stewart's exposure to a Southwest Cheese supervisor, Bryant Fernandez. *See id.* ¶ 37 (holding that a defendant's failure to remedy problems with its pipelines after prior explosions supported a finding of recklessness). This is especially true because another employee corroborated Plaintiff's report and Southwest Cheese had previous knowledge that Mr. Stewart had shown a photograph of his genitals to Southwest Cheese management employees. Under these circumstances, holding that Defendant's failure to investigate or discipline Mr. Stewart was at most negligent would effectively insulate Southwest Cheese from its supervisors' alleged knowledge of Mr. Stewart's conduct. Defendant has never advocated for this position. For example, Defendant has never argued that Mr. Fernandez's alleged knowledge of Mr. Stewart's attack should not be attributed to Southwest Cheese. Instead, as it did on appeal, Defendant simply ignores Plaintiff's testimony that she complained to management about Mr. Stewart's act of exposure. Yet, this testimony strongly supports Plaintiff's claims that Defendant acted either intentionally or in reckless disregard of her feelings when it required her to continue working in the presence of Mr. Stewart, a known harasser.

Defendant identifies only one other reason for dismissing Plaintiff's intentional infliction of emotional distress claim. Defendant contends that Plaintiff's emotional distress cannot be considered severe because she never sought medical treatment and remained able to work. In *Trujillo*, the leading case on this issue, the New Mexico Supreme Court defined severe emotional distress as distress with which a reasonable person "would be unable to cope." *Trujillo*, 2002 -

10

NMSC- 004, ¶ 28. *Trujillo* involved allegations that the defendant's decision to fire the plaintiff for unsatisfactory job performance caused the plaintiff to feel lousy and depressed, take Prozac, sleep long hours, and eat erratically. *Id.* After weighing the allegations, the New Mexico Supreme Court concluded that plaintiff's emotional distress was not severe enough to permit recovery under the law. *Id.*

Unfortunately, given the fact-specific nature of its holding, *Trujillo* is of limited help in deciding whether Plaintiff has presented sufficient evidence that she suffered severe distress. First, *Trujillo* did not announce a bright-line rule that plaintiff must seek medical treatment to recover on a claim for severe emotional distress. *See generally id.* Second, the type of distress at issue in *Trujillo* – sadness over losing a job – is very different than the distress alleged in this case – nearly constant fear of sexual assault. While the Court could not find any published New Mexico case law regarding fear of sexual assault, it strikes the Court that this is the type of distress that a normal person would not be expected to endure for a lengthy period. As a result, the Court is inclined to allow Plaintiff to proceed to trial on her claim that she was severely distressed by the presence and leering of Mr. Stewart.

This outcome is consistent with the New Mexico's recognition that (1) fright can constitute emotional distress, (2) the longer fright endures the more likely it is to be severe, and (3) the severity of a plaintiff's distress can be inferred from the circumstances causing the distress. As the New Mexico Court of Appeals explained:

> Emotional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like. It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is extreme that the liability arises. Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be

>considered in determining its severity. Severe distress must be proved; but in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed.

*Dominguez*, 1981-NMCA-146, ¶ 16 (quoting Restatement (Second) of Torts § 46 (1965)). Here, Plaintiff attests that, for more than a one and a half year period, she was afraid of being sexually assaulted. Plaintiff's Affidavit ¶ 7. Although Plaintiff did not stop working or seek any medical treatment due to this distress, it is up to the jury to weigh this information in light of Plaintiff's testimony that (1) she was forced to work in an environment with a man who had previously exposed himself to her and continued to leer at her and (2) her fear of this man was real. In other words, Defendant is not entitled to summary judgment on Plaintiff's intentional infliction of emotional distress claim because Plaintiff has reported that she experienced daily fear and, given the objective evidence, a reasonable jury could conclude that Plaintiff's fear of Mr. Stewart was so great that no reasonable person would be expected to endure it.

In reaching this conclusion, the Court has been mindful to view the evidence in the light most favorable to Plaintiff. Viewed differently, a reasonable jury might conclude that Plaintiff's distress was not extreme and severe. For example, Defendant emphasizes Plaintiff's decision to accept an offer of permanent employment with Southwest Cheese after Mr. Stewart's attack. Defendant argues that this decision shows Plaintiff was not severely distressed by Mr. Stewart. Defendant's Supplemental Brief at 11. At this stage in the proceedings, the Court is not at liberty to draw this defense-favorable inference. As Plaintiff points out, her decision to accept a permanent position with Southwest Cheese was more akin to a decision to continue working at Southwest Cheese than a decision to accept a new job with a new employer.[3] Furthermore,

---

[3] In its prior MEMORANDUM OPINION AND ORDER (Doc. No. 61), the Court explained that Plaintiff worked at Southwest Cheese from February 2009 until February 2011. *Id.* at 2. While Plaintiff initially worked for Southwest Cheese as a temporary employee through a staffing company, she eventually accepted a permanent offer of employment in September 2009 after Mr. Stewart's alleged attack. *Id.*

12

neither party has presented any evidence about Plaintiff's finances or any other reasons she may have had for accepting the job. Standing alone, Plaintiff's decision to accept the permanent employment offer is not enough to overcome Plaintiff's evidence that she was severely distressed by the conduct of Mr. Stewart. The Court will allow Plaintiff's intentional infliction of emotional distress claim to proceed to trial.[4]

### C. Negligent Retention and Supervision

Under New Mexico law, an employer may be held liable for negligently hiring, training, retaining, or supervising its employees. *Lessard v. Coronado Paint & Decorating Ctr., Inc.*, 2007-NMCA-122, ¶ 28, 142 N.M. 583. "The proper standard for determining whether an employer should be held liable for negligent supervision or retention of an employee [is] . . . whether the employer knew or reasonably should have known that some harm might be caused by the acts or omissions of the employee who is entrusted with [the] position." *Los Ranchitos v. Tierre Grande, Inc.*, 1993-NMCA-107, ¶ 21, 116 N.M. 222. To survive summary judgment on a negligent hiring, retention, or supervision claim, a plaintiff must produce evidence that (1) "the employee was unfit, considering the nature of the employment and the risk he posed to those with whom he would foreseeably associate" and (2) "the employer knew or should have known that the employee was unfit" but failed to take appropriate action. *Valdez v. Warner*, 1987-NMCA-076, ¶11, 106 N.M. 305; *see also Spencer v. Health Force, Inc.*, 2005-NMSC-002, ¶ 22, 137 N.M. 64 ("Negligent retention occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his or her unfitness, and the employer fails to take further action such as investigating, discharge or

---

[4] Defendant interprets Plaintiff's complaint as asserting an intentional infliction of emotional distress claim ("IIED") based on the conduct of Mr. Borjas. Defendant argues that this claim should be dismissed with prejudice. Because Plaintiff does not identify Mr. Borjas's behavior as a basis for her IIED claim, the Court construes any Borjas-related IIED claim Plaintiff may have originally asserted as abandoned.

reassignment.") (internal citation omitted) (quoting *L.M. ex rel. S.M. v. Karlson*, 646 N.W.2d 537, 545 (Minn. Ct. App. 2002)).

Plaintiff argues that Southwest Cheese should be held liable for negligently retaining and supervising Mr. Stewart and Mr. Borjas. The Court will address each claim separately.

### i. *Mr. Borjas*

In her Supplemental Brief, Plaintiff devotes only two sentences to defending her claim that Southwest Cheese negligently retained and supervised Mr. Borjas. She states that:

> SWC's failure to take any action against Borjas despite his very public use of SWC radio system to engage in his obsession with Ms. Macias and his harassment of her is well documented. Despite Ms. Macias's complaints nothing was done.

Plaintiff's Supplemental Brief at 18. This short explanation mischaracterizes the operative facts. First, Plaintiff's affidavit does not support a finding that Mr. Borjas used the radio in a manner that would have put Southwest Cheese on notice that he was harassing Plaintiff. Plaintiff testified that Mr. Borjas would call her into his office through the radio and that others would hear and laugh. Plaintiff's Affidavit ¶ 8. Without any context, such meager allegations cannot support a finding that Southwest Cheese knew or should have known that Mr. Borjas was mistreating Plaintiff. Second, the Court previously struck Plaintiff's statement that she reported Mr. Borjas's harassing conduct to the Southwest Cheese Human Resources Director. *See* MEMORANDUM OPINION AND ORDER (Doc. No. 59 at 8). The Tenth Circuit affirmed this decision on appeal, and, viewing the evidence in the light most favorable to Plaintiff, found that Plaintiff "never complained to management" about Mr. Borjas's alleged mistreatment except to ask to be moved to a different shift because she was "tired of him." *Macias*, 2015 U.S. App. LEXIS 14832 at *4, 9-10. No reasonably jury could conclude that this complaint put Southwest Cheese on notice that Mr. Borjas was unfit for his position. The admissible evidence shows that the only information

Plaintiff communicated to the company was her personal dislike of Mr. Borjas. For this reason, the Court will dismiss Plaintiff's claim that Southwest Cheese negligently retained and/or supervised Mr. Borjas.

### ii. Mr. Stewart

Plaintiff's claim that Southwest Cheese negligently retained and supervised Mr. Stewart rests on the same facts as her claim for intentional infliction of emotional distress: (1) Mr. Stewart photographed his genitals at an off-site work-related function and shared the picture with management, (2) Mr. Stewart subsequently exposed himself to Plaintiff and another female employee, (3) when Plaintiff and this other employee complained to a Southwest Cheese supervisor, nothing was done, (4) instead, Mr. Stewart continued working for Southwest Cheese and began leering at Plaintiff continuously in a sexual manner. As part of its assessment of Plaintiff's hostile work environment claim, the Tenth Circuit held that the above facts created a triable issue regarding Southwest Cheese's negligence in failing to prevent or otherwise stop Mr. Stewart's harassment of Plaintiff. *Macias*, 2015 U.S. App. LEXIS 14832 at *18. Despite this ruling, Defendant asks the Court to dismiss Plaintiff's negligent retention and supervision claim on the ground that Mr. Stewart's misconduct was not foreseeable to Defendant. This, the Court cannot do.

While couched in terms of "foreseeability" and proximate cause, Defendant's request unavoidably conflicts with the Tenth Circuit's prior ruling. Under New Mexico law, courts evaluate foreseeability according to a "knew or should have known" standard. *See Valdez*, 1987-NMCA-076, ¶¶ 11-15; *see also Bowen v. Mescalero Apache Tribe*, NO. 29,625, 2011 N.M. App. Unpub. LEXIS 27, at *17-23 (N.M. Ct. App. Jan. 27, 2011) (unpublished). This is the same standard the Tenth Circuit applied when it found that Plaintiff had produced sufficient evidence

of Defendant's negligence to proceed to trial on her hostile work environment claim. *Macias*, 2015 U.S. App. LEXIS 14832 at *18-19 (finding that Plaintiff presented evidence that Southwest Cheese "knew or should have known about the harassment but failed to stop it."). Thus, the Tenth Circuit's ruling precludes dismissal, at least on foreseeability grounds, of Plaintiff's claim that Defendant negligently supervised Mr. Stewart.

      Defendant attempts to obfuscate this fact by drawing a nonsensical distinction between Plaintiff's hostile work environment claim and Plaintiff's negligent retention/supervision claim: Defendant argues that the Tenth Circuit's holdings are "unique to the hostile work environment claim" because "a hostile work environment can exist by virtue of a **single** incident of harassment," while a negligent supervision claim "do[es] not comport with a single-incident standard." Defendant's Supplemental Brief at 13. Defendant does not cite to any case law to support this latter proposition, but merely reiterates that to be held liable for an employee's misconduct an employer must have prior notice that the employee is unfit. As just discussed, however, the "knew or should have known" standard is not a distinguishing characteristic of New Mexico law. Under both state and federal law, whether the harassment at issue occurred during a single incident or over a long period of time, an employer cannot be held directly liable for an employee's harassment unless the employer knew or should have known about the harassment but failed to stop it. *Debord v. Mercy Health Sys. of Kan., Inc.*, 737 F.3d 642, 650 (10th Cir. 2013); *Valdez*, 1987-NMCA-076, ¶¶ 11. The distinction Defendant attempts to draw results from comparing apples to oranges; Defendant announces the standard for determining whether a work environment is hostile and then compares this with the negligent supervision standard. The more appropriate comparison is the one the Court has drawn between the matching state and federal "knew or should have known" standards for determining whether an employer

16

was negligent with regard to an employee's harassment or other misconduct. Because there is no incongruity between these standards, the Court sees no reason for reaching divergent conclusions about whether Plaintiff has presented sufficient evidence of Southwest Cheese's negligence under state and federal law.

Even if there could be any question about this matter in the abstract, under the facts of this case, it is clear that adopting Defendant's foreseeability argument would contravene the Tenth Circuit's ruling. Defendant maintains that Mr. Stewart's act of showing management a picture of his genitals "did not make it foreseeable that Stewart would allegedly expose himself on the production floor at Southwest Cheese." Defendant's Supplemental Brief at 14. To the contrary, the Tenth Circuit held that Mr. Stewart's prior act of photographing his genitals would allow a reasonable jury to conclude that Southwest Cheese "should have known about Mr. Stewart's potential for the type of inappropriate conduct that occurred a few months later," when Mr. Stewart exposed himself to Plaintiff. *Macias*, 2015 U.S. App. LEXIS 14832 at *21-22 (reasoning that Mr. Stewart's act of photographing his genitals "triggered [Defendant's] duty to respond or at least put [Defendant] on notice that Mr. Stewart posed a potential threat to the work environment."). While Defendant vigorously disagrees with the Tenth Circuit's assessment, that is not a proper basis for ignoring the Tenth Circuit ruling. The Court, therefore, rejects Defendant's request that the Court dismiss Plaintiff's negligent retention and supervision claim regarding Mr. Stewart on foreseeability grounds.

Defendant briefly raises a second argument in favor of dismissal; Defendant contends that Plaintiff has not produced evidence that Defendant's alleged negligence is causally connected to Mr. Stewart's behavior. Defendant's Supplemental Brief at 14. This portion of Defendant's Supplemental Brief merely recasts Defendant's foreseeability argument under the

rubric of causation. Defendant does not argue that its alleged negligence – failing to fire or reprimand Mr. Stewart for photographing his genitals and showing the photograph to management personnel and later exposing his genitals to Plaintiff – has no causal connection to Mr. Stewart's harassment of Plaintiff. Instead, Defendant claims that causation cannot be established because it adequately enforced its "supervisory procedures." *Id.* In other words, Defendant claims that it was not negligent in failing to investigate or otherwise respond to Mr. Stewart's conduct. The Court has already addressed why Plaintiff has marshaled sufficient evidence to present this issue to the jury.

### D.  Timeliness of Defendant's Motion for Summary Judgment

Plaintiff seeks to avoid the dismissal of her state law claims by arguing that Defendant's motion for summary judgment is untimely. Although Defendant has not had an opportunity to respond to this allegation, it is clear that Plaintiff's position is unfounded. Defendant timely moved for summary judgment on Plaintiff's state law claims over two years ago, on September 27, 2013. *See* Defendant's MSJ; *see also* SCHEDULING ORDER (Doc. No. 23) (setting a September 27, 2013 dispositive motions deadline). Through a series of events that Defendant had no control over, this Court and the Tenth Circuit effectively postponed ruling on Defendant's motion for summary judgment on the state law claims. Thus, Defendant's timely-filed motion for summary judgment remains outstanding as to Plaintiff's state law claims.

### E.  Hostile Work Environment Claim

Without requesting the Court's permission, Defendant unilaterally expanded the scope of its supplemental brief to request the partial dismissal of Plaintiff's remaining federal claim: a Title VII hostile work environment claim. Defendant notes that this claim is premised on the conduct of two employees: Cody Stewart and Jose Borjas. Defendant argues, however, that the

Tenth Circuit's ruling precludes Plaintiff from pursuing the claim as to Mr. Borjas. Defendant's Supplemental Brief at 4-6. To support this position, Defendant argues that it can be liable for Mr. Borjas's conduct only if it was negligent. Defendant then highlights the portion of the Tenth Circuit opinion where the Tenth Circuit stated that Plaintiff never complained that Mr. Borjas was discriminating against her. Defendant argues that this factual finding is "fundamentally inconsistent with the idea that Southwest Cheese had actual or constructive knowledge of Borjas's alleged behavior." *Id.* at 5. Thus, Defendant believes Plaintiff's hostile work environment claim must be dismissed with regard to Mr. Borjas.

In her supplemental brief, Plaintiff responds to Defendant's argument by pointing out that the Tenth Circuit considered Mr. Borjas's conduct when analyzing Plaintiff's hostile work environment claim. Plaintiff's Supplemental Brief at 5. In the alternative, Plaintiff argues that Southwest Cheese can be held vicariously liable for Mr. Borjas's conduct, even in the absence of any negligence, because Mr. Borjas was Plaintiff's supervisor. *Id.* at 6-7. Plaintiff does not, however, directly engage with Defendant's arguments regarding the legality of holding Southwest Cheese liable under a negligence theory for Mr. Borjas's alleged harassing conduct. Not having had an opportunity to reply, Defendant has not commented on Plaintiff's position. Because the Court believes these issues require full briefing, the Court will deny, as premature, Defendant's request to partially dismiss Plaintiff's hostile work environment claim. The Court notes that Defendant should not have raised this novel issue in its supplemental brief, which was supposed to be limited to addressing the merits of Plaintiff's state law claims.

IT IS ORDERED THAT:

1. Defendant's motion for summary judgment on Plaintiff's state law claims (Doc. No. 45) is GRANTED in part and DENIED in part.

2. The Court will dismiss Plaintiff's breach of contract claim with prejudice.

3. The Court construes Plaintiff's intentional infliction of emotional distress claim as abandoned to the extent the claim was premised on the conduct of Jose Borjas. Plaintiff may proceed to trial on her intentional infliction of emotional distress claim to the extent the claim is based on the conduct of Cody Stewart.

4. The Court will dismiss with prejudice Plaintiff's claim that Defendant negligently supervised and/or retained Jose Borjas. Plaintiff may proceed to trial on her claim that Defendant negligently supervised and/or retained Cody Stewart.

5. The Court denies as premature Defendant's request for the partial dismissal of Plaintiff's hostile work environment claim. If Defendant would like reassert this request, Defendant must file a motion for summary judgment by November 30, 2015. Plaintiff may file a response by December 7, 2015. Defendant may file its reply by December 14, 2015. In briefing this issue, the parties are directed to provide particular attention to whether Plaintiff has produced sufficient evidence for a jury to conclude that Jose Borjas was Plaintiff's supervisor. *See Kramer v. Wasatch County Sheriff's Office*, 743 F.3d 726, 737 (10th Cir. 2014) (whether a harasser is a supervisor is a critical threshold question to determining whether the employer is liable for the harassment).

_____
SENIOR UNITED STATES DISTRICT JUDGE