**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

YVONNE MACIAS,

        Plaintiff,

v.                                   No. CIV 12-350 JAP/WPL

SOUTHWEST CHEESE COMPANY, LLC,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

    This MEMORANDUM OPINION AND ORDER addresses Plaintiff Yvonne Macias's opposed MOTION TO FILE AMENDED WITNESS LIST AND EXHIBIT LIST (Doc. No. 131) ("Motion to Amend"), which the Court orally denied at the December 29, 2015 pretrial conference. The history of the motion and the reasons for its denial are set out more fully below.

**Background**

**A. Plaintiff's Claims**

    In this gender-based employment discrimination lawsuit, Plaintiff Yvonne Macias asserts various claims against her former employer, Defendant Southwest Cheese Company, LLC, based on the alleged harassment by two Southwest Cheese employees – Cody Stewart and Jose Borjas. Of specific relevance to the Motion to Amend, Plaintiff alleges that Mr. Borjas, a Southwest Cheese shift supervisor, began acting obsessively towards her in early 2011. When Ms. Macias failed to reciprocate Mr. Borjas's attentions, Mr. Borjas allegedly began calling Ms. Macias to his office without cause, standing close to her, and staring at her in a provocative manner. Plaintiff claims this misconduct contributed to the creation of a sexually hostile work environment. Since the beginning of the lawsuit, Defendant's liability for Mr. Borjas's behavior

1

has been one of the key issues facing the Court. *See* ANSWER TO FIRST AMENDED

COMPLAINT (Doc. No. 12 at 4) (asserting as an affirmative defense that reasonable care was

taken to prevent and promptly correct any harassing or discriminatory behavior of which

Defendant had notice). Plaintiff contends that Defendant acted negligently with regard to Mr.

Borjas's harassment and can, therefore, be held directly liable for any harm he caused. Defendant

disagrees.

**B. Procedural History**

Plaintiff filed this lawsuit in state court on February 27, 2012. *See* Notice of Appeal

Pursuant to §28-1-13 NMSA 1978, Exhibit A to NOTICE OF REMOVAL (Doc. No. 1-1). The

procedural history of the case is outlined below:

1. On February 5, 2013, the Court entered a SCHEDULING ORDER (Doc. No. 23) setting a September 13, 2013 discovery deadline.

2. On February 20, 2013, early in the discovery process, Plaintiff's counsel obtained an affidavit from Misty English, a former Southwest Cheese employee. *See* Affidavit of Misty English, Exhibit 6 to PLAINTIFF YVONNE MACIAS' RESPONSE TO DEFENDANT SOUTHWEST CHEESE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT (Doc. No. 47-6). In this affidavit, Ms. English attests that while she was working on the VAT deck at Southwest Cheese, Donnie Romero sprayed her with water so that he could see her nipples. *Id.* ¶¶ 2, 4.

3. On September 13, 2013, discovery came to a close.

4. On September 27, 2013, Defendant filed an opposed MOTION FOR SUMMARY JUDGMENT (Doc. No. 45). While this motion was pending, the parties filed a joint proposed pretrial order stating that discovery was complete and there were no outstanding discovery matters of which the Court should be aware. *See* PRETRIAL ORDER (Doc. No. 58) at 16.

5. On June 11, 2014, the Court entered an order granting summary judgment in favor of Defendant on all of Plaintiff's federal claims and remanding the state law claims. *See* MEMORANDUM OPINION AND ORDER (Doc. No. 61). Plaintiff appealed. *See* NOTICE OF APPEAL (Doc. No. 63).

6. On August 24, 2015, the Tenth Circuit Court of Appeals issued an order reversing the dismissal of Plaintiff's hostile work environment claim, vacating the remand of Plaintiff's state law claims, and remanding the case to this Court. *Macias v. Southwest Cheese Co.*,

*LLC*, Nos. 14-2109 & 14-2154, 2015 U.S. App. LEXIS 14832 (10th Cir. Aug. 24, 2015) (unpublished).

7. October 14, 2015, Magistrate Judge William Lynch held a post-appeal status conference. *See* CLERK'S MINUTES (Doc. No. 99). The parties agreed that discovery was complete and that they would like a trial date as soon as possible. *Id.* The Court set trial for November 2, 2015 with witness lists, exhibit lists, and the proposed pretrial order due October 20, 2015. *See* NOTICE OF HEARING (Doc. No. 87) and NOTICE OF HEARING (Doc. No. 89).

8. The parties asked the Court to reschedule the trial to allow additional time for preparation. *See* AGREED MOTION TO VACATE AND CONTINUE TRIAL SETTING AND PRETRIAL DEADLINES (Doc. No. 90). The Court granted this motion and, with the parties' agreement, reset trial to begin January 11, 2016. *See* ORDER (Doc. No. 90) and AMENDED NOTICE OF HEARING (Doc. No. 101).

9. On October 20, 2015, the parties filed a joint proposed pretrial order reiterating that discovery was complete and that there were no outstanding discovery disputes. *See* DRAFT PRETRIAL ORDER (Doc. No. 97) at 19.

10. At the October 22, 2015 pretrial conference, Defendant stated that it planned on filing a motion to reconsider asking the Court to dismiss Plaintiff's remaining state law claims. TRANSCRIPT OF OCTOBER 22, 2015 PRETRIAL CONFERENCE (Doc. No. 121 at 3:7-13). Because Defendant's original motion for summary judgment on Plaintiff's state law claims remained unresolved, the Court directed Defendant to file a supplemental brief rather than a motion to reconsider. *Id.* at 3:14-4:10. The Court set deadlines for both parties to provide supplemental briefing on the viability of Plaintiff's state law claims. *Id.* at 24:9-18. On October 27, 2015, the court-deadline, Defendant filed its supplemental brief. *See* DEFENDANT SOUTHWEST CHEESE COMPANY LLC'S SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DE45] (Doc. No. 100). In addition to requesting the dismissal of Plaintiff's state law claims, Defendant requested partial dismissal of Plaintiff's hostile work environment claim. *Id.* at 4-6. On November 23, 2015, the Court issued an order granting in part and denying in part Defendant's motion for summary judgment on Plaintiff's state law claims. *See* MEMORANDUM OPINION AND ORDER (Doc. No. 119). Notably, the Court dismissed Plaintiff's state law claim that Defendant negligently supervised and retained Mr. Borjas. *Id.* The Court set an expedited briefing schedule to address Defendant's argument that Plaintiff's hostile work environment claim against Mr. Borjas should not proceed to trial. *Id.* In accordance with this order, Defendant filed a motion for partial summary judgment on November 30, 2015. *See* DEFENDANT SOUTHWEST CHEESE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT (Doc. No. 122).

11. On December 7, 2015, Plaintiff filed a response along with new evidence in the form of an affidavit from an undisclosed witness Marilyn Hartwell. Affidavit of Marilyn Harwell, Exhibit 3 to PLAINTIFF YVONNE MACIAS'S RESPONSE TO "DEFENDANT

SOUTHWEST CHEESE COMPANY'S MOTION FOR PARTIAL SUMMARY
JUDGMENT AND BRIEF IN SUPPORT" (Doc. No. 130-3) ("Hartwell Affidavit").

12. The following day, December 8, 2015, Plaintiff filed a Motion to Amend her witness list
and exhibit list to allow for the untimely disclosure of Ms. Hartwell and another
previously undisclosed witness – Perla Tarango. Motion to Amend at 3.

### C.  Ms. Hartwell's Proposed Testimony

Ms. Hartwell worked at Southwest Cheese from 2006 to 2014. Hartwell Affidavit ¶ 1. In

her affidavit, Ms. Hartwell claims that during her employment she observed three Southwest

Cheese employees – Jose Borjas, Donnie Romero, and Manual Rodriquez – spray female

employees with water on the "VAT deck." *Id.* ¶¶ 3-5. Most significantly, in 2007, Ms. Hartwell

claims she saw Jose Borjas spraying women "on a continuous and frequent basis" in front of

other management employees. *Id.* ¶ 4. According to Ms. Hartwell, "the water would wet down

the females shirt so that the outline of their breasts and genitals could be seen along with the

outline of their undergarments." *Id.* Ms. Hartwell alleges that Human Resources sent a letter

saying the water spraying should stop but, nevertheless, the "water spraying continued

throughout the term of [her] employment." *Id.* ¶ 6. Plaintiff maintains that Ms. Hartwell's

testimony creates a genuine issue of material fact regarding Defendant's notice of Mr. Borjas's

harassment of female employees.

### D.  Plaintiff's Motion to Amend

In her Motion to Amend, Plaintiff asks the Court to (1) retroactively extend the witness

disclosure deadline to excuse the untimely identification of Ms. Hartwell, (2) allow Plaintiff to

amend her witness list to add another previously undisclosed witness – Perla Tarango – who will

allegedly testify about water spraying on the VAT desk, (3) require Defendant to produce the

Human Resources memorandum discussed in Ms. Hartwell's affidavit, and (4) allow Plaintiff to

add the Human Resources memorandum as a trial exhibit. Defendant opposes Plaintiff's

attempted production of new evidence as untimely and irrelevant. *See* DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO FILE AMENDED WITNESS LIST AND EXHIBIT LIST (Doc. No. 140). Plaintiff counters that her motion to amend is timely because "neither the testimony of Ms. Hartwell or Ms. Tarango . . . was discovered until at least December 4th, 2015." PLAINTIFF YVONNE MACIAS'S REPLY TO "DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO FILE AN AMENDED WITNESS LIST AND EXHIBIT LIST" (Doc. No. 144 at 2) ("Reply"). In her briefing, Plaintiff does not, however, provide any explanation for how she came to learn about Ms. Hartwell and Ms. Tarango on December 4, 2015. Nor does Plaintiff discuss why she was unable to discover either witness in 2013 during the discovery process.

    At the December 29, 2015, pretrial conference, the Court questioned Plaintiff's counsel, Eric Dixon, about the late disclosure of Ms. Hartwell and Ms. Tarango. As for Ms. Hartwell, Mr. Dixon explained that (1) he first learned about Ms. Hartwell when she came to his office on December 4, 2015 to consult with him about an unrelated matter and (2) until he introduced them to each other, Plaintiff did not know Ms. Hartwell. The Court pointed out that Ms. Hartwell's affidavit states that she "worked with" Plaintiff between 2009-2011. Mr. Dixon reaffirmed, however, that Plaintiff did not know Ms. Hartwell as they worked in different areas at Southwest Cheese. When the Court pressed Mr. Dixon on the apparent inconsistency between his representation and Ms. Hartwell's affidavit, Mr. Dixon clarified that he drafted Ms. Hartwell's affidavit and that any confusion was the result of his poor choice of language. He stated that Ms. Hartwell testified that she "worked with" Plaintiff solely based on reviewing a Southwest Cheese personnel chart Mr. Dixon provided to Ms. Hartwell.

5

The Court next questioned Mr. Dixon about his efforts during the discovery process to investigate allegations of inappropriate water spraying. The Court pointed out that in February 2013, Plaintiff's counsel obtained an affidavit from Misty English about inappropriate water spraying on the VAT deck. Plaintiff's counsel stated that he did not ask Ms. English about whether Mr. Borjas was involved in this water spraying because Mr. Borjas worked in another area of the plant. He also stated that he did not ask Ms. English to identify other victims of inappropriate water spraying.

Finally, the Court questioned Plaintiff's counsel about the proposed testimony of Ms. Tarango. In response to this questioning, Mr. Dixon stated that, while he had not personally spoken with Ms. Tarango, he expected her to testify that female employees were being sprayed with water on the VAT deck. The Court asked if Ms. Tarango would testify that she saw Mr. Borjas spraying women with water. Plaintiff's counsel stated that he did not believe Ms. Tarango would testify about Mr. Borjas. Mr. Dixon then voluntarily withdrew Ms. Tarango as a witness, thereby resolving part of Plaintiff's Motion to Amend. This exchange prompted the Court to ask Plaintiff's counsel how he discovered Ms. Tarango. Plaintiff's counsel responded that Rebecca Martinez, one of his clients, told him about Ms. Tarango on December 4, 2015, the same day Ms. Hartwell knocked on Mr. Dixon's door with new evidence. Having considered all of this information, the parties' oral arguments, the briefing, and the law, the Court orally denied Plaintiff's motion to amend her witness list to add Ms. Hartwell.

## Discussion

In the briefing, Plaintiff misidentifies the standard for allowing the late disclosure of witness testimony. Plaintiff cites Federal Rule of Civil Procedure 15(a) and argues that the Court should freely give her leave to amend her witness list because "the burden is . . . on the party

6

opposing the amendment to demonstrate why the amendment should not be permitted." Reply at 2. Rule 15 governs amendments of the complaint and is not applicable to Plaintiff's request for permission to amend her witness list after the deadline for doing so has passed. This request is governed by case law involving the enforcement of the court's pretrial deadlines.

In general, a witness who has not been timely disclosed may not testify at trial unless good cause is shown for the witness's late disclosure. *See Davey v. Lockheed Martin Corp.*, 301 F.3d 1204, 1208 (10th Cir. Colo. 2002) ("The party moving to amend [a pretrial deadline] bears the burden to prove the manifest injustice that would otherwise occur."); *Summers v. Mo. Pac. R.R. Sys.*, 132 F.3d 599, 604 (10th Cir. 1997) (evaluating admissibility of witness testimony under good cause standard). The existence of good cause depends on four factors: "(1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in court, and (4) bad faith or willfulness in failing to comply with the court's order." *Summers*, 132 F.3d 599, 604; *see also Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1254 (10th Cir. 2011). Whether these factors favor exclusion rests with the sound discretion of the district court. *Summers*, 132 F.3d at 604 (district courts enjoy "wide latitude" in enforcing pretrial order deadlines).

For the reasons stated on the record at the December 29, 2015 pretrial conference, the Court finds that the four factors listed above weigh against the admission of Ms. Hartwell's testimony. First, it is clear that allowing Plaintiff to amend her witness list to include Ms. Hartwell would result in extreme prejudice to Defendant. The disclosure of Ms. Hartwell occurred very late in this case, well after the deadlines for disclosing witnesses and shortly

7

before trial is scheduled to begin. As a result, Defendant has not had a fair opportunity to investigate Ms. Hartwell's accusations and formulate a defense. This is not a simple task that can be completed before trial. Ms. Hartwell's allegations about Mr. Borjas are new to the case. Defendant reasonably contends that investigating Ms. Hartwell's claims would require: (1) deposing Ms. Hartwell, (2) conducting a document search for the Human Resources memorandum Ms. Hartwell claims was circulated about water spraying, and (3) identifying and interviewing other witnesses who may corroborate or discredit Ms. Hartwell's proposed testimony. The Court agrees that it would be unfairly prejudicial to force Defendant to rush through these investigatory tasks while preparing for trial. Even if Defendant could complete a hurried investigation of Ms. Hartwell's allegations between now and January 11, 2016, this would negatively impact the amount of time and energy Defense counsel could dedicate to trial preparation. For all of these reasons, the Court is firmly convinced that the prejudice to Defendant from allowing Ms. Hartwell to testify cannot be cured without a trial continuance. A continuance, however, would prejudice Defendant's interests in having a timely adjudication of this nearly four-year-old case. Due to scheduling constraints, the Court would likely be unable reschedule this trial until the summer of 2016. Given the age of the case, the Court does not think this is a reasonable outcome. As a result, the Court concludes that the first two factors – prejudice and the ability to cure prejudice – weigh strongly against allowing Ms. Hartwell to testify.

The third factor the Court must consider is whether the admission of Ms. Hartwell's testimony would "disrupt the orderly and efficient trial of the case or other cases in court." *Summers*, 132 F.3d 599, 604. The Court acknowledges that this factor does not favor exclusion as strongly as the first two factors. Plaintiff disclosed Ms. Hartwell prior to trial. As a result,

adding Ms. Hartwell as a witness does not threaten to cause trial interruptions. *See Davy*, 301 F.3d at 1212 (finding that a motion to amend filed the Friday before trial did not threaten to disrupt the trial). For the reasons already discussed, however, the addition of Ms. Hartwell as a witness would necessitate a continuance to cure the prejudice to Defendant. Such a continuance would obviously disrupt trial preparation. Moreover, expanding the scope of trial could well result in a multi-week trial, rather than the one-week trial the parties originally estimated. Because the Court would find it difficult to reschedule a multi-week trial without negatively impacting its docket, the Court finds that the third factor does not support Plaintiff's request to amend her witness list.

The final factor the Court must consider is the Plaintiff's bad faith in failing to comply with the Court's witness disclosure deadline. This is the factor that has most influenced the Court's analysis of Plaintiff's Motion to Amend. The Tenth Circuit Court of Appeals has repeatedly warned district courts to be flexible in granting extensions of pretrial order deadlines so as to ensure the "economical and efficient trial of every case on its merits without chance or surprise." *Davey*, 301 F.3d at 1208. Under these standards, the exclusion of evidence is considered a "drastic sanction." *Summers*, 132 F.3d at 604. At the same time, however, a party should not ignore pretrial deadlines on the assumption that late disclosure is likely to be forgiven. Exclusion of witness testimony may be warranted if a party's negligence in failing to disclose a witness threatens to prejudice the opposing side and such prejudice cannot reasonably be cured.

Here, prejudice to Defendant is high and Plaintiff has not provided an adequate explanation as to why the proposed witness, Ms. Hartwell, could not have been identified earlier. In the briefing, Plaintiff blames Defendant for her failure to discover Ms. Hartwell during the discovery process. Plaintiff argues that Defendant inappropriately failed to disclose the water

spraying memorandum Ms. Hartwell mentions in her affidavit. Plaintiff contends that Defendant was required to disclose this affidavit in response to Plaintiff's request that Defendant provide (1) a list of all complaints it received about sexual harassment, including harassment perpetrated by Mr. Borjas and (2) a list of all reprimands given to Mr. Borjas. Ms. Hartwell, however, did not testify that the memorandum she received mentioned Mr. Borjas or treated the water spraying as evidence of sexual harassment. In the absence of such testimony, the Court cannot conclude that Plaintiff's discovery requests would have uncovered the memorandum or that Defendant failed to appropriately respond to these requests. As a result, the Court will focus its attention on whether Plaintiff or her legal counsel acted diligently in conducting an investigation into Mr. Borjas's potential involvement in inappropriate water-spraying.

Unfortunately, it appears that Plaintiff's counsel failed to take basic steps to investigate complaints of water spraying of female employees. Plaintiff's counsel knew about inappropriate water spraying as early as February 2013 when he obtained the affidavit of Misty English. Plaintiff's counsel, however, failed to make any inquiries to see if Mr. Borjas, one of the two male employees who allegedly harassed Plaintiff, participated in this misconduct. After carefully considering the matter, it is the Court's belief that with minimal diligence, Plaintiff's counsel could have discovered Ms. Hartwell earlier by questioning Ms. English and conferring with Plaintiff and his other clients. Plaintiff's counsel, Mr. Dixon, represents two other Southwest Cheese employees – Lorena Chavez-Acosta and Rebecca Martinez – who brought factually-related sexual discrimination lawsuits against Defendant. Mr. Dixon has represented Plaintiff, Ms. Chavez-Acosta, and Ms. Martinez since the spring of 2012, when he filed three lawsuits on their respective behalves. Given Mr. Dixon's long-standing access to these witnesses and the overlapping nature of their claims, the Court is convinced that Plaintiff could have discovered

Ms. Hartwell or other evidence of Mr. Borjas's involvement in water spraying earlier. This is especially true given that Ms. Hartwell was a former client of Mr. Dixon's on a matter unrelated to the claims against Defendant. Clearly, Plaintiff's counsel has numerous connections that would have allowed him to investigate alleged harassment at Southwest Cheese. Allowing Plaintiff to call Ms. Hartwell to testify despite her counsel's lack of diligence in developing Plaintiff's case would result in the sort of trial by ambush that the Federal Rules of Civil Procedure are designed to prevent.

IT IS THEREFORE ORDERED that MOTION TO FILE AMENDED WITNESS LIST AND EXHIBIT LIST (Doc. No. 131) is DENIED.


_____
SENIOR UNITED STATES DISTRICT JUDGE