**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

YVONNE MACIAS,

        Plaintiff,

v.                                              No. CIV 12-350 JAP/WPL

SOUTHWEST CHEESE COMPANY, LLC,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

      In this lawsuit, Plaintiff Yvonne Macias, a former employee of Defendant Southwest Cheese Company, LLC, asserts, *inter alia*, a hostile work environment claim premised on the contention that she was sexually harassed by two male coworkers – Cody Stewart and Jose Borjas – during the course of her employment. Plaintiff brings this claim under both Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*., and the New Mexico Human Rights Act (the "NMHRA"), N.M. Stat. Ann. § 28-1-7. On November 30, 2015, Defendant filed DEFENDANT SOUTHWEST CHEESE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT (Doc. No. 122) ("Defendant's MPSJ") asking the Court to dismiss Plaintiff's hostile work environment claim with regard to Mr. Borjas. Plaintiff opposes Defendant's motion for partial summary judgment as procedurally and substantively inadequate. *See* PLAINTIFF YVONNE MACIAS'S RESPONSE TO "DEFENDANT SOUTHWEST CHEESE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT" (Doc. No. 130) ("Response"). Having carefully considered the evidence, briefing, including DEFENDANT SOUTHWEST CHEESE COMPANY'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. No. 138) ("Reply"), and controlling law, the Court agrees that Southwest Cheese is

1

entitled to summary judgment on Plaintiff's hostile work environment claim related to conduct of Mr. Borjas. The Court will, therefore, grant Defendant's motion.

## BACKGROUND

### I.      Plaintiff's Employment with Southwest Cheese

Plaintiff Yvonne Macias began working for Defendant Southwest Cheese Company, LLC in February 2009. Plaintiff's Affidavit, Exhibit 1 to PLAINTIFF YVONNE MACIAS' RESPONSE TO "DEFENDANT SOUTHWEST CHEESE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT (Doc. No. 47) (Doc. No. 47-1) ("Plaintiff's Affidavit") ¶ 2. Southwest Cheese terminated her employment in February of 2011. *Id.* ¶ 20. Ms. Macias maintains that two male Southwest Cheese employees sexually harassed her during her two years of employment. First, in June 2009, Cody Stewart – a Southwest Cheese Assistant Team Leader – allegedly exposed his genitals to Ms. Macias and another female employee. *Id.* ¶ 6. Ms. Macias contends that she reported this incident to a shift supervisor, but nothing was done. *Id.* ¶¶ 6, 21. Mr. Stewart remained employed by Southwest Cheese and would leer at Ms. Macias in a sexual manner while at work. *Id.* ¶ 7.

Second, according to Ms. Macias, starting in January 2011, after Ms. Macias moved to the day shift, Jose Borjas, a Southwest Cheese shift supervisor, started acting obsessively towards her. *Id.* ¶ 8. When Ms. Macias failed to reciprocate his attentions, Mr. Borjas allegedly began calling Ms. Macias to his office without cause, standing close to her, and staring at her in a provocative manner. *Id.* Although Plaintiff maintains she complained to various management employees that she was tired of Mr. Borjas and that he was making her miserable, Plaintiff never told Southwest Cheese management that Mr. Borjas was sexually harassing her. Deposition of Yvonne Macias, Exhibit C to DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 45-1 at 111:9-17, 113:21-23, 115:3-10, 117:6-20, 118:1-3, 118:20-25, 119:3, 119:17-25,

120:18-25).  On February 8, 2011, Southwest Cheese discharged Ms. Macias after she had accumulated twelve disciplinary actions. Plaintiff's Affidavit ¶ 20; Affidavit of Brenda Miller, Exhibit B to DEFENDANT SOUTHWEST CHEESE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT (Doc. No. 45) (Doc. No. 45-1) ¶ 7. The prior court rulings contain additional details regarding Ms. Macias's employment with Southwest Cheese and the alleged harassment. *See* MEMORANDUM OPINION AND ORDER (Doc. No. 61); *Macias v. Southwest Cheese Co., LLC*, Nos. 14-2109 & 14-2154, 2015 U.S. App. LEXIS 14832 (10th Cir. Aug. 24, 2015) (unpublished). The Court adopts, by reference, the facts set out in these opinions for the purpose of ruling on Defendant's MPSJ.

## II.    Procedural History

In Plaintiff's FIRST AMENDED CIVIL COMPLAINT (Doc. No. 8), Plaintiff asserted seven claims against Defendant: (1) a 42 U.S.C. § 1981 racial discrimination claim, (2) a Title VII and NMHRA hostile work environment claim, (3) a Title VII quid pro quo sexual harassment claim, (4) a NMHRA retaliation claim, (5) a breach of contract claim, (6) an intentional infliction of emotional distress claim, and (7) a negligent supervision and retention claim. On December 12, 2012, the Court dismissed Plaintiff's § 1981 claim under Federal Rule of Civil Procedure 12(b)(6). *See* MEMORANDUM OPINION AND ORDER (Doc. No. 19). Approximately nine months later, after the close of discovery, Defendant moved for summary judgment on Plaintiff's remaining claims, including Plaintiff's hostile work environment claim. *See* DEFENDANT SOUTHWEST CHEESE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT (Doc. No. 45). The Court construed Plaintiff's hostile work environment claim as based on the alleged misconduct of both Mr. Borjas and Mr. Stewart. MEMORANDUM OPINION AND ORDER (Doc. No. 61 at 11).

Because the Court determined that Mr. Borjas's attempted flirtation and Mr. Stewart's leering and act of exposing himself were not severe enough to have altered the conditions of Plaintiff's employment, the Court granted Defendant's motion for summary judgment on Plaintiff's hostile work environment claim. *Id.* at 19-24. The Court also dismissed Plaintiff's quid pro quo and retaliation claims, which were premised upon Plaintiff's factually unsupported assertion that Defendant fired her for refusing to engage in a flirtation with Mr. Borjas. *Id.* at 24-30. Plaintiff appealed. *See* NOTICE OF APPEAL (Doc. No. 63). On August 24, 2015, the Tenth Circuit Court of Appeals entered an ORDER AND JUDGMENT (1) reversing the dismissal of Plaintiff's hostile work environment claim, (2) affirming the dismissal of Plaintiff's quid pro quo and retaliation claims, and (3) vacating the remand of Plaintiff's remaining state law claims. *See Macias*, 2015 U.S. App. LEXIS 14832. Because the scope of these rulings bears upon Defendant's MPSJ, the Court will outline the rulings in detail.

The Court of Appeals turned to the merits of Plaintiff's hostile work environment claim almost exactly halfway through its opinion, after resolving various evidentiary and procedural disputes. *Id.* at *13. After summarizing the pertinent legal standards, the Court of Appeals considered and rejected this Court's determination that the combined conduct of Mr. Borjas and Mr. Stewart did not rise to the level of objective hostility required to support an actionable discrimination claim. *Id.* at *15-16. In reaching this conclusion, the Court of Appeals focused primarily on the alleged misconduct of Mr. Stewart, which it described as criminal and "physically threatening and humiliating." *Id.* at *15. Contrary to this Court's determination, the Court of Appeals reasoned that Mr. Stewart's act of exposing himself to Plaintiff and other female Southwest Cheese employees was serious enough to be considered objectively hostile.

4

The Court of Appeals emphasized Plaintiff's fear that Mr. Stewart would expose himself to her again or otherwise assault her. Given this fear, it held that:

> Mr. Stewart's act of exposing himself, coupled with his alleged sexual leering and the conduct of Mr. Borjas, demonstrates a triable factual issue regarding the severity and pervasiveness of the alleged harassment.

*Id.* at *15-16. Having thus concluded that Plaintiff could prevail on the merits of her hostile work environment claim, in a separate section entitled "Liability," the Court of Appeals next addressed whether Defendant could be held liable for the allegedly hostile work environment. *Id.* at *18.

The Court of Appeals began by explaining that Defendant had advanced an alternative ground for dismissal of Plaintiff's hostile work environment claim, which this Court had not considered. In the words of the Court of Appeals, Defendant maintained that:

> [V]icarious liability is not an option because Mr. Stewart lacked authority to take "tangible employment actions" against her. *See Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2454, 186 L. Ed. 2d 565 (2013). Nor is it liable on a negligence theory, SWC contends, because it had neither actual nor constructive knowledge of the alleged harassment.

*Id.* The Court of Appeals rejected this position, holding that the record revealed a fact dispute about whether Defendant had notice of Mr. Stewart's alleged harassment. *Id.* at *20-21 ("A reasonable jury could conclude that these reports of the June 2009 exposure gave SWC actual notice of Mr. Stewart's harassment. . . . [Similarly,] the incident in November 2008 was close enough in time to the June 2009 exposure to create a fact issue regarding whether SWC should have known about Mr. Stewart's potential for the type of inappropriate conduct that occurred a few months later [when he exposed himself to Plaintiff]."). The Tenth Circuit Court of Appeals explicitly refrained, however, from issuing a decision regarding Defendant's potential vicarious liability for Mr. Stewart's harassment. *Id.* at *18. Similarly, the Tenth Circuit never discussed Defendant's liability for Mr. Borjas's conduct under either a negligence or supervisory theory.

*Id.* at *18-23. It simply remanded the hostile work environment claim with these issues unresolved. *See id.*

The Court then turned to the dismissal of Plaintiff's quid pro quo harassment claim and Plaintiff's retaliation claim. As to the quid pro quo harassment claim, the Court of Appeals reasoned that Plaintiff lacked evidentiary support that Mr. Borjas conditioned Plaintiff's employment on submission to his sexual advances and then had Plaintiff fired when she refused to accede to his demands. *Id.* at *24. The Court of Appeals noted that:

> Ms. Macias testified that Mr. Borjas never made any sexual advance towards her, such as ask her out on a date, ask to kiss or touch him, or do anything—other than work-related tasks. Moreover, she acknowledged the validity of all disciplinary actions against her except her last, and no evidence ties that or any other infraction to her refusal to submit to sexual conduct.

*Id.* (internal citation omitted). The Court of Appeals dismissed Plaintiff's retaliation claim for similar reasons: Plaintiff had not submitted any evidence that she complained about Mr. Borjas harassing her. *Id.* at *25. Thus, she could not make a prima facie case of retaliation. The Court of Appeals specifically acknowledged that Plaintiff had asked to be moved to a different shift from Mr. Borjas because "he was making her miserable and she was tired of him." The Court of Appeals reasoned, however, that this complaint did not qualify as "protected opposition to discrimination" because it did not provide Southwest Cheese with notice that Mr. Borjas was allegedly discriminating against her. *Id.* at *25-26.

On remand, Defendant has taken the position that that the Tenth Circuit opinion precludes Plaintiff from pursuing a hostile work environment claim as to Mr. Borjas. Defendant argues that (1) because Mr. Borjas was not Plaintiff's supervisor, it can be liable for Mr. Borjas's conduct only if it was negligent and (2) the Tenth Circuit findings establish Defendant was not negligent in disciplining Mr. Borjas or otherwise stopping Mr. Borjas from harassing Plaintiff. In

the alternative, Defendant argues that even if Mr. Borjas was Plaintiff's supervisor it cannot be vicariously liable for Mr. Borjas's conduct because it is entitled to the protection of the *Faragher/Ellerth* defense.[1] To support its claim that a jury could not find it negligent, Defendant highlights the portions of the Tenth Circuit opinion where the Court of Appeals stated that Mr. Borjas never made sexual advances to Plaintiff, Plaintiff admitted the validity of her disciplinary infractions, and Plaintiff never complained that Mr. Borjas was discriminating against her. Defendant argues that these factual findings "preclude [Plaintiff] from now creating a fact issue on whether Southwest Cheese was negligent in responding to an alleged hostile work environment attributable to Borjas." Defendant's MPSJ at 6. Plaintiff, of course, disagrees.

## STANDARD OF REVIEW

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The party seeking summary judgment bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation marks omitted). Once the movant meets this burden, Rule 56 requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). In considering a motion for summary judgment, then, the Court's "role is simply to determine whether the evidence proffered by plaintiff would be sufficient, if believed by the

---

[1] The *Faragher/Ellerth* defense is eponymously named after the seminal cases *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) and *Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998).

ultimate factfinder, to sustain her claim." *Foster v. Alliedsignal, Inc.*, 293 F.3d 1187, 1195 (10th Cir. 2002).

## DISCUSSION

Both Title VII and the NMHRA prohibit an employer from subjecting an employee to a sexually hostile work environment. *See Harsco v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007); *Ocana v. American Furniture Company*, 2004 -NMSC- 018, ¶ 23, 135 N.M. 539. As a result, for the purpose of ruling on Defendant's MPSJ, the Court will discuss Plaintiff's Title VII and NMHRA claims concurrently. *See Ulibarri v. State of New Mexico Dep't of Corrections Acad.*, 2006 -NMSC- 009, ¶ 11, 139 N.M. 193 (relying on federal law to interpret the NMHRA).

Here, Defendant does not challenge Plaintiff's claim that Mr. Borjas's alleged harassment contributed to the creation of an objectively hostile work environment. The only issue is whether Defendant can be held liable for Mr. Borjas's alleged harassment of Plaintiff. When an employee's sexually harassing conduct gives rise to a sexually hostile work environment, an employer may be liable under one of two theories: (1) negligence or (2) vicarious liability. *An v. Regents of the Univ. of Cal.*, 94 F. App'x 667, 675 (10th Cir. 2004); *Ocana*, 2004 -NMSC- 018, ¶¶ 23, 26 (adopting Title VII standard for determining whether an employer is liable for a hostile work environment). The negligence theory is available for all employees. However, "[a]n employer is subject to vicarious liability to a victimized employee [only] for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). Stated differently, a court may generally presume that an employer is liable "where there is actionable sexual harassment and the harassing employee has supervisory authority over the victimized employee." *Ocana*, 2004 -NMSC- 018, ¶ 26.

### A.  Direct Liability under a Negligence Theory

Defendant argues that it cannot be held liable for Mr. Borjas's harassing conduct under a negligence theory because Plaintiff has not produced any admissible evidence that Defendant had actual or constructive knowledge of this harassment. The Court agrees. To succeed in holding an employer directly liable under a negligence theory, "an employee must present enough evidence for a reasonable jury to find that the employer knew or should have known about the harassment but failed to stop it." *Debord v. Mercy Health Sys. of Kan., Inc.*, 737 F.3d 642, 650 (10th Cir. 2013). Actual knowledge generally arises when "the plaintiff has reported harassment to management-level employees." *Kramer v. Wasatch County Sheriff's Office*, 743 F.3d 726, 755 (10th Cir. 2014). Alternatively, an employer may be held liable for failing to prevent harassing conduct if it had constructive notice that the harasser was a "dangerous employee" who posed a threat to others. *Id.* at 756.

Plaintiff contends Defendant "had actual or constructive knowledge of Borjas's harassment of Ms. Macias because he radioed Ms. Macias into his office on an open radio." Response at 15. The Court has already rejected this contention in its November 23, 2015 MEMORANDUM OPINION AND ORDER (Doc. No. 119) dismissing Plaintiff's state law claim against Defendant for the negligent supervision and retention of Mr. Borjas. *Id.* at 14-15. Plaintiff makes no effort to directly attack this analysis, which focused on the paucity of available evidence establishing that Defendant had notice of Mr. Borjas's harassment. Instead, Plaintiff ignores the Court's November 23, 2015 ruling and argues that: (1) the Court should not consider Defendant's request for partial dismissal of Plaintiff's hostile work environment claim because the Tenth Circuit Court of Appeals rejected Defendant's attempts to bifurcate the claim on appeal, (2) contrary to the factual findings made by this Court and the Tenth Circuit Court of

9

Appeals, Plaintiff did, in fact, complain about Mr. Borjas's harassment, and (3) previously unavailable evidence creates a factual issue about whether Defendant knew that Mr. Borjas was harassing other women and therefore should have known about his harassment of Plaintiff.[2] For the reasons discussed in detail below, none of these arguments is convincing.

### i.     *Preclusive Effect of the Tenth Circuit Ruling*

Plaintiff maintains that the law of the case forestalls Defendant's request for dismissal of the Borjas-related hostile work environment claim. According to Plaintiff, the Tenth Circuit Court of Appeals rejected Defendant's arguments about Mr. Borjas (1) when it remanded Plaintiff's hostile work environment claim for trial and (2) when it denied Defendant's request for a panel rehearing. Response at 7. Admittedly, the Court is slightly perplexed by the absence, from the Tenth Circuit decision, of a discussion of Defendant's liability for Mr. Borjas's alleged misconduct. The Tenth Circuit held that the combined conduct of Mr. Borjas and Mr. Stewart created a triable issue on whether Plaintiff was exposed to a hostile work environment. Then, construing Defendant's liability argument as directed at the conduct of Mr. Stewart, the Court held that there was a fact issue regarding Defendant's negligence in failing to intervene after it had knowledge of Mr. Stewart's propensity to expose himself. Neither holding addresses Defendant's liability for the conduct of Mr. Borjas. Nor do these holding necessitate a finding that Defendant is liable for Mr. Borjas's harassment of Plaintiff.

In determining whether a plaintiff has suffered sexual harassment that is severe and pervasive enough to warrant monetary recovery, a court must consider the "totality of the circumstances," weighing the instances of harassment holistically. *See EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 799 (10th Cir. 2007). This does not mean, however, that a court can automatically

---

[2] Plaintiff's Response is repetitive, unorganized, and at times bewildering. The Court had done its best to coalesce Plaintiff's complaints, assertions, and rants into discrete, legally cognizable arguments.

lump all harassing conduct together when analyzing an employer's liability for a sexually hostile

work environment. *See Hollins v. Delta Airlines*, *238 F.3d 1255, 1258-1259 (10th Cir. 2001)*

(separately analyzing an employer's negligence with regard to the harassing conduct of different

employees); *Adler v. Wal-Mart Stores*, 144 F.3d 664, 675 (10th Cir. 1998) (same); *see also*

*Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 697 (7th Cir. 2001) (explaining that although courts

may not "'carve up the incidents of harassment' when determining if the harassment was severe

or pervasive," when determining whether an employer is liable, a court must distinguish between

different harassers based on their supervisory status.).

It is well-settled that "[a]n employer is only obligated to respond to harassment of which

it actually knew, or in the exercise of reasonable care should have known." *Adler*, 144 F.3d at

673. Plaintiff's argument about the preclusive effect of the Tenth Circuit ruling flies directly in

the face of this principle. Just because an employer is negligent in preventing the harassing

conduct of one employee, in this case Mr. Stewart, does not necessarily mean the employer is

liable for the unrelated harassing conduct of another employee, such as Mr. Borjas. The Tenth

Circuit has long rejected a "one strike you're out" approach to liability for sexual harassment.

For example, in *Ford v. West*, 222 F.3d 767, 778 (10th Cir. 2000), the plaintiff argued that

evidence of harassment by his former supervisor was relevant to show negligence with regard to

more recent misconduct of other employees because both instances of harassment were part of a

"pattern of continuous use of ethnic slurs." *Id.* at 776. The Tenth Circuit, however, rejected this

argument and held that the harassment by the plaintiff's former supervisor did not give the

employer constructive notice that other employees were likely to harass the plaintiff. *Id.* at 776-

77. As this case shows, an employer is only liable for sexual harassment committed by a

particular employee if the employer could have prevented the harassment perpetrated by that

employee. *See Debord*, 737 F.3d at 650. Hence, a defendant's liability for a sexually hostile work environment depends on its responsibility for each logically distinct instance of harassment.

To be clear, an employer's knowledge that a plaintiff is being harassed by one employee can add to the employer's constructive knowledge that another employee is also involved in the harassment. For example, if a plaintiff reported that she was being heckled, persecuted, and intimidated by a group of coworkers, which included coworkers, W, Y, and Z, a jury could arguably conclude that plaintiff's employer possessed constructive knowledge and should be held liable for coworker X's joint participation in the campaign of harassment, despite the plaintiff's failure to identify this harasser by name. This is because it is reasonable, in a joint harassment scenario, to hold the employer responsible for conducting an investigation that would uncover the harassment by other individuals upon receiving notice of the joint conduct. Plaintiff, however, has not advanced the argument that Defendant should have known about Mr. Borjas's harassment of Plaintiff because it knew about Mr. Stewart's harassment. In her Response, Plaintiff emphasizes Defendant's disregard for her complaints about Mr. Stewart's sexual misconduct. But, Plaintiff does not causally connect this disregard with Mr. Borjas's harassment. Plaintiff simply charges Defendant with having a history of ignoring sexual harassment complaints. This is a propensity argument that is not sufficient, as a matter of law, to show that Defendant was negligent in its supervision of and response to Mr. Borjas.

In addition, the facts do not support the argument that Mr. Stewart's harassment gave rise to constructive knowledge of Mr. Borjas's harassment. There is no admissible evidence in the record that would support a jury finding that these instances of harassment were related. Mr. Stewart's exposure of his genitals to Plaintiff occurred roughly 18 months before Mr. Borjas

allegedly began flirting with Plaintiff. Moreover, Plaintiff changed shifts between these two

incidents. As a result, the Court concludes that (1) Defendant's negligence with regard to Mr.

Stewart's behavior does not create a fact issue with regard to Defendant's negligence in failing to

stop Mr. Borjas's subsequent harassment of Plaintiff and (2) the Tenth Circuit decision regarding

Defendant's negligent supervision of Mr. Stewart does not dictate a finding that Defendant was

negligent in its treatment of Mr. Borjas. The denial of Defendant's motion for a panel rehearing

adds nothing to the analysis because the Court did not make any statement on the merits as part

of this denial.

ii.       ***Plaintiff's Renewed Insistence that Defendant had Actual Notice***

Despite multiple court rulings that Plaintiff did not report Mr. Borjas's sexual harassment

to Defendant, Plaintiff persists in arguing the exact opposite, namely that she complained about

Mr. Borjas's harassment to various management officials. In her October 6, 2013 affidavit,

which Plaintiff filed in opposition to Defendant's MOTION FOR SUMMARY JUDGMENT

(Doc. No. 45), Plaintiff claimed that she reported Mr. Borjas's harassment to Defendant via

management personnel. *See* Plaintiff's Affidavit ¶ 9. Defendant asked the Court to strike this

allegation as contradictory to Plaintiff's prior deposition testimony. *See* DEFENDANT

SOUTHWEST CHEESE COMPANY'S MOTION TO STRIKE AFFIDAVITS (Doc. No. 49 at

7). In response, Plaintiff cited to a portion of her deposition, in which Plaintiff's counsel

questioned Plaintiff about her termination for allegedly making an on-the-job error that resulted

in spoiled product. *See* PLAINTIFF YVONNE MACIAS' RESPONSE TO DEFENDANT

SOUTHWEST CHEESE COMPANY'S MOTION TO STRIKE AFFIDAVITS" (Doc. No. 51 at

9) (citing Plaintiff's Deposition, Exhibit 1 (Doc. No. 51-1 at 189:22-23 and 190:3-15). Plaintiff

maintained that this portion of her deposition, quoted below, was consistent with her claim that

she reported Mr. Borjas's harassment to Defendant:

> Q: Now, there is handwriting [on your termination write-up] that says, "Employee did not
> want to add comments," signed "Brenda Miller"; do you see that?
>
> A: Yes, sir.
>
> Q: Did you attempt to tell Brenda Miller what was going on?
>
> . . .
>
> A: Yes, sir, but she did not want to go into details, so I refused sign.
>
> Q: So, you were trying to make a grievance or tell Brenda Miller what was really going
> on and she refused to listen; is that right?
> . . .
>
> A: Yes, when I arrived at the – at Brenda Miller's office, Danny Garcia, Jose Borjas and
> another team leader were already there talking to her, so she didn't want to hear my side
> of the story.

Plaintiff's Deposition, Exhibit 1 to PLAINTIFF YVONNE MACIAS' RESPONSE TO

DEFENDANT SOUTHWEST CHEESE COMPANY'S MOTION TO STRIKE AFFIDAVITS"

(Doc. 51-1 at 189:18-190:15). After considering Plaintiff's deposition as a whole, including her

various admissions that she did not complain about the specific misconduct that formed the basis

of her claim, the Court struck Plaintiff's allegation that she reported Mr. Borjas's harassment as

an attempt to create a sham issue of fact. *See* MEMORANDUM OPINION AND ORDER (Doc.

No. 59 at 8). The Tenth Circuit affirmed this ruling, finding that Plaintiff "never complained to

management" about Mr. Borjas's alleged mistreatment except to ask to be moved to a different

shift because she was "tired of him." *Macias*, 2015 U.S. App. LEXIS 14832 at *4, 9-10.

Plaintiff now cites to the same portion of her deposition quoted above to establish that

Defendant had notice of Mr. Borjas's harassment. This argument is a blatant attempt to evade the

Court's prior ruling. Moreover, given Plaintiff's deposition testimony about her lack of

complaint, no reasonable jury could infer that Plaintiff's attempted complaint gave Defendant

notice of Mr. Borjas's misconduct. In other words, no reasonable jury could interpret her

attempted complaint as conveying information to Defendant about the alleged harassment, rather

than merely communicating her disagreement with Defendant's performance-based reasons for

her termination. Notably, in the above excerpt, Plaintiff never attests that she said or indicated

she was being sexually harassed. For this reason and for the same reasons that the Court struck

Plaintiff's allegations at summary judgment, the Court finds that the above deposition testimony

does not create a fact-issue regarding Defendant's notice of Mr. Borjas's harassment.

### iii.   *New Evidence of Constructive Notice*

According to Plaintiff, Defendant had constructive notice of Mr. Borjas's harassing

behavior because management officials observed him spraying women with water in a lascivious

manner both prior to and during Plaintiff's employment. Plaintiff supports her novel water-

spraying allegations with an affidavit from a previously undisclosed witness. Because this

witness was not disclosed in a timely fashion, the Court struck this affidavit from the record and

will not consider this evidence. *See* MEMORANDUM OPINION AND ORDER (Doc. No. 160)

and MEMORANDUM OPINION AND ORDER (Doc. No. 161).

### B.  Vicarious Liability under a Supervisory Theory

As previously stated, in certain circumstances, an employer may be held vicariously

liable for a supervisor's harassment of a subordinate. Here, the parties fervently dispute whether

Mr. Borjas acted as Plaintiff's supervisor thereby allowing Plaintiff to prevail on a theory of

vicarious liability. In the context of a sexual harassment claim, a supervisor is a person "the

employer has empowered . . . to take tangible employment actions against the victim, *i.e.*, to

effect a significant change in employment status, such as hiring, firing, failing to promote,

reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2443 (2013) (internal citation omitted). Through an affidavit of its former Human Resources Director, Defendant asserts that the only management employees with the authority to "take tangible employment actions" against Plaintiff were the Human Resources Director, Brenda Miller, and Southwest Cheese's President, George Chappel. Defendant's MPSJ at 4-5 (citing Affidavit of Brenda Miller ¶¶ 10-11, Exhibit B (Doc. No. 122-3)). Plaintiff counters by arguing that Mr. Borjas, as a Team Leader, had the de facto power to suspend Plaintiff and approve her termination. The Court need not and will not resolve this dispute. Even if Mr. Borjas qualifies as a "supervisor," the undisputed evidence shows that Defendant is entitled to relief from liability for Mr. Borjas's alleged harassing conduct under the *Faragher/Ellerth* affirmative defense.

When, as is the case here, no tangible employment action has been taken against the employee as a result of the challenged harassment,[3] an employer may assert the *Faragher/Ellerth* to escape vicarious liability for a supervisor's harassing conduct. The *Faragher/Ellerth* defense has two prongs. *Kramer v. Wasatch County Sheriff's Office*, 743 F.3d 726, 737 (10th Cir. 2014) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998) and *Faragher v. City of Boca Raton, Fla.*, 524 U.S. 775, 807 (1998)); *Pinkerton v. Colo. DOT*, 563 F.3d 1052, 1058-1059 (10th Cir. 2009). First, an employer must prove by a preponderance of the evidence that it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior." *Kramer*, 743 F.3d at 745. Second, the employer must show that the plaintiff "unreasonably failed

---

[3] Plaintiff repeatedly claims that Mr. Borjas fired her, but it appears Plaintiff highlights this fact only to support her claim that Mr. Borjas was her supervisor. Plaintiff has not asked the Court to find that the *Faragher/Ellerth* defense is inapplicable because Mr. Borjas's harassment culminated in her termination. To the extent Plaintiff intended to assert such an argument, it is foreclosed. On appeal, The Tenth Circuit ruled that Plaintiff has not produced evidence to support a finding that Mr. Borjas fired Plaintiff for refusing to return his sexual advances. *Macias*, 2015 U.S. App. LEXIS 14832 at *24.

to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.* The undisputed evidence shows that Southwest Cheese has satisfied both prongs, i.e. no reasonable jury could find that Defendant had not carried its burden of proof by the preponderance of the evidence.

> ### i.    *Prevention and Correction*

The first prong of the *Faragher/Ellerth* defense encompasses two components: prevention and correction. An employer must show that it acted reasonably (1) in creating policies to prevent sexual harassment and (2) in promptly correcting reported or observed sexual harassment. *Pinkerton*, 563 F.3d at 1062. In determining whether an employer acted reasonably to prevent sexual harassment, courts focus on the existence of a valid sexual harassment policy. *See*, *e.g. id.* (agreeing that the defendant exercised reasonable care to prevent sexual harassment by adopting an adequate sexual harassment policy); *see also Helm v. Kansas*, 656 F.3d 1277, 1288 (10th Cir. 2011) ("[C]ourts have recognized that the existence of a valid sexual harassment policy is an important consideration in determining whether an employer acted reasonably to prevent sexual harassment."). An employer who adopts a valid sexual harassment policy, disseminates this policy through a handbook, and periodically trains employees how to avoid sexual harassment will be found to have exercised reasonable care to prevent sexual harassment. *Helm*, 656 F.3d at 1289. Plaintiff does not dispute that Southwest Cheese has met these prevention-focused requirements. Thus, Defendant need only show that it took reasonably prompt corrective action to end Mr. Borjas's harassing conduct to clear the first hurdle of the *Faragher/Ellerth* defense.

The answer to this question hinges on when Defendant obtained proper notice of Mr. Borjas's harassing conduct.[4] *Helm*, 656 F.3d at 1290. As the Tenth Circuit has explained, notice of the sexually harassing conduct is a necessary precursor to trigger an employer's duty to take corrective action. *Id.* "The law against sexual harassment is not self-enforcing and an employer cannot be expected to correct harassment unless the employee makes a concerted effort to inform the employer that a problem exists." *Pinkerton*, 563 F.3d at 1063. Hence, if an employee fails to report the alleged harassment, the employer cannot be deemed unreasonable for failing to take corrective action. *See Debord*, 737 F.3d at 654 (an employer has acted reasonably to correct sexual harassment if it has responded in a prompt manner "when it was given proper notice" of the alleged harassment); *Shaw v. AutoZone, Inc.*, 180 F.3d 806, 812-813 (7th Cir. 1999) ("Because [plaintiff] never informed [defendant] of [the] alleged harassment and because [defendant] had no reason to know of the harassment, there was nothing for [defendant] to

---

[4] In her Response, Plaintiff repeatedly complains that Defendant "had a long history of ignoring [her] complaints," including her complaints about Mr. Stewart's "indecent exposure." Response at 16. It is not clear, however, whether Plaintiff is simply carping about Defendant's misconduct or whether Plaintiff is attempting to argue that Defendant's failure to respond to her complaint about Mr. Stewart precludes Defendant from invoking the *Faragher/Ellerth* defense. Plaintiff's meandering response never mentions *Faragher* or *Ellerth*, never discusses the elements of the *Faragher/Ellerth* defense, and never directly addresses Defendant's claim that it is entitled to summary judgment under the *Faragher/Ellerth* framework. Plaintiff instead focuses on evidence of Mr. Borjas's supervisory status and her perception that Defendant acted negligently with regard to Mr. Borjas. Because reasonableness is an element of the *Faragher/Ellerth* defense, the Court construes Plaintiff as opposing Defendant's request for *Faragher/Ellerth* protection on the ground that Defendant negligently supervised Mr. Borjas. It is possible Plaintiff also intended to argue that Defendant is not entitled to summary judgment on the *Faragher/Ellerth* defense because Defendant failed to correct the harassing conduct of Mr. Stewart. The Court will not raise this argument for Plaintiff and will not address it at length, except to note that the *Faragher/Ellerth* defense, like Title VII law generally, focuses on Defendant's response or lack of response to the course of harassment at issue. *See Helm*, 656 F.3d at 1290 ("[I]n order to establish that it took proper action to correct harassment, [the defendant is] required to show that it acted reasonably promptly on [the plaintiff's] complaint when it was given proper notice of her allegations as required under its complaint procedures."); *see also Alford v. Aaron Rents, Inc.*, 2010 U.S. Dist. LEXIS 67790, 76-77 (S.D. Ill. May 17, 2010) ("The *Faragher/Ellerth* standard requires an examination of the conduct at issue in a specific case, and not to an employer's past conduct in similar situations."). In other words, a defendant's past failure to promptly correct an unrelated instance of harassment does not forever bar this defendant from shielding itself from liability with the *Faragher/Ellerth* defense. If it did, the preventative purpose of the *Faragher/Ellerth* defense would be severely undercut. *See Faragher*, 524 U.S. at 806 (because Title VII's "primary objective" is avoiding future harm, it would be inconsistent with the statute to refuse to give employers credit for making reasonable efforts to end harassment). Here, Plaintiff has not produced evidence that there was a connection between Mr. Stewart's harassment and Mr. Borjas's harassment. The Court will not, therefore, consider the reasonableness of Defendant's response to Mr. Stewart in deciding whether Defendant is protected from liability for Mr. Borjas under the *Faragher/Ellerth* defense.

respond to. Under these circumstances, [defendant's] response (to do nothing beyond its reasonable attempts to prevent sexual harassment) was reasonable.").

Plaintiff contends she attempted to report Mr. Borjas's harassment to Defendant on the day she was fired. The Court has already explained why the evidence does not support a finding that this attempted complaint put Defendant on notice of the alleged harassment. The Court has also already rejected Plaintiff's arguments that Defendant should have known about Mr. Borajs's harassment of women through other avenues. Because the admissible evidence conclusively shows that Defendant was never put on proper notice of the harassment at issue, Defendant's duty to respond to this harassment was never triggered and a reasonable jury would be compelled to find Defendant acted reasonably in doing nothing to correct the harassment of which it was ignorant.

### ii.    *Unreasonable Delay*

In this case, there is no genuine dispute regarding Plaintiff's failure to take advantage of Southwest Cheese's preventive or corrective opportunities. It is well-settled that an employer may satisfy the second prong of the *Faragher/Ellerth* defense with evidence that the employee was informed of reporting procedures but failed to take timely advantage of those procedures. *Helm*, 656 F.3d at 1291. Here, the admissible evidence shows that Southwest Cheese directed Plaintiff on how to file sexual harassment complaints, but Plaintiff neglected to report Mr. Borjas's sexual harassment to Southwest Cheese during the course of her employment. It was not until June 30, 2011, after Plaintiff had left the company, that Plaintiff filed a discrimination charge first informing Southwest Cheese of the alleged harassment. This occurred roughly five months after the commencement of the alleged harassment and roughly four months after Plaintiff's termination. Delays of this length have been held to be untimely. *See*, *e.g.*, *Pinkerton*,

563 F.3d at 1064 (ruling that employer was entitled to assert affirmative defense because

employee did not report sexual harassment until two months after the harassment began);

*Christian v. AHS Tulsa Regional Medical Center, LLC*, 430 F. App'x 694, 700 (10th Cir. 2011)

(unpublished opinion) (affirming decision that employer proved affirmative defense by showing

that plaintiff unreasonably delayed reporting sexual harassment for five months). Plaintiff's

arguments that Brenda Miller impeded her attempt to report the harassment fail for the reasons

discussed above.

### C.  Defendant's Violations of the Local Rules

Plaintiff insists that the Court must deny Defendant's motion for partial summary for

violating Local Rules 10.5, 10.7 and 56.1. Rule 56.1 requires motions for summary judgment to

include a concise numbered list of material facts. D.N.M.LR-Civ. 56.1. While Defendant did not

comply with this Rule, this minor defect is harmless given the procedural posture of the case.

The operative facts are well-established and have been previously identified both by Defendant

and the Court. Refusing to hear Defendant's motion would be inefficient and a severe sanction

given the nearness of trial.

Rule 10.7 states:

An exhibit should be submitted only once and may later be referred to by document title
and filing date. An exhibit may be submitted more than once, however, if the submitting
party wishes to bring to the Court's attention portions of the exhibit different from those
previously marked.

D.N.M.LR-Civ. 10.7. Plaintiff argues that Defendant violated this rule by resubmitting the same

exhibits it submitted at summary judgment. Defendant claims this was acceptable because it was

bringing the Court's attention to new portions of each exhibit. Defendant glosses over the fact

that is resubmitted several duplicates of completely unmarked exhibits. *See* Defendant's Exhibits

A-1, A-2, A-3, A-4, A-5, and B to Defendant's MPSJ (Doc. No. 122-1, 122-2, and 122-3).

However, the Court will excuse the violation of Rule 10.7 for the same reason it excused Defendant's violation of Rule 56.1. Although Defendant's disregard for Rule 10.7 has cluttered the docket, it did not harm Plaintiff and it would be inefficient to deny Defendant's motion for partial summary judgment at this time.

Finally, Defendant exceeded the page limits for exhibits contained in Rule 10.5. Defense counsel explained this violation of the Local Rules as follows:

> Southwest Cheese attached more than fifty pages of exhibits to its Motion for the Court's convenience and in line with the practice both parties have used in filing every motion for summary judgment in this and its two related cases. For that reason, the parties have not previously requested leave to enlarge the page limit for exhibits under Local Rule 10.5

Reply at 9. In other words, Defendant willfully and knowingly violated the Local Rule under the assumption that the Court would overlook this violation because both parties have previously flouted the page limits rule without consequence. This is not acceptable; a history of past violations is never an excuse for future violations. Moreover, Defendant's present violation of Rule 10.5 is particularly egregious because the Court previously recognized that the parties were submitting enlarged documents and the Court admonished both parties that they needed to obey the Local Rules and page limits. *See* MEMORANDUM OPINION AND ORDER (Doc. No. 59 at 5). Since that time, Plaintiff has complied with the applicable page limitations. Defendant, however, has not; Defendant filed 135 pages of exhibits attached to its motion for partial summary judgment. This is more than double the normal limit, which is particularly problematic because the Court set Defendant's motion for partial summary judgment on an expedited briefing schedule giving Plaintiff only one week to respond. There is no excuse for Defendant's behavior.

However, given the January 11, 2016 trial setting, denying Defendant's otherwise meritorious motion for partial summary judgment on procedural grounds would be an extreme waste of court resources. The Court will not, therefore, accede to Plaintiff's request that the

Court reject Defendant's MPSJ as a sanction for Defendant's violation of Rule 10.5. Instead, the Court will shift the costs from Plaintiff to Defendant for Plaintiff's counsel's time in reviewing the 135 pages of exhibits. In so doing, the Court recognizes the injustice of completely excusing Defendant's willful violation of the page limits rule in contravention of a previous court order. In addition, shifting costs will remedy the slight harm Plaintiff's counsel suffered by being forced to review excessive exhibits. Plaintiff's counsel must file an affidavit by January 19, 2016 listing time he spent reviewing the exhibits to Defendant's motion for partial summary judgment and noting his customary hourly fee for this type of work. Defendant may file any objections it has to this affidavit and the imposition of costs by January 22, 2016.

### D. Defendant's Request for Entry of a Final Judgment

Defendant asks the Court to enter final judgment under Federal Rule of Civil Procedure 54(b) on the dismissal of Plaintiff's claim "concerning Borjas." Defendant's MPSJ at 11. Federal Rule of Civil Procedure 54(b) provides that "[w]hen an action presents more than one claim for relief--whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). For Rule 54(b) certification of a final judgment to be proper, a district court must make two determinations: (1) that the order certified is final and (2) that there is no just reason to delay review of the order. *Inola Drug, Inc. v. Express Scripts, Inc.*, 390 F. App'x 774, 775 (10th Cir. 2010). Making these findings requires the Court to "weigh[] Rule 54(b)'s policy of preventing piecemeal appeals against the inequities that could result from delaying an appeal." *Stockman's Water*, 425 F.3d at 1265. Pertinent considerations include "whether the claims under review are separable from the others remaining to be adjudicated and

22

whether the nature of the claims already determined are such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Id.* Rule 54(b) entries are the exception not the rule. "[T]rial courts should be reluctant to enter Rule 54(b) orders since the purpose of this rule is a limited one: to provide a recourse for litigants when dismissal of less than all their claims will create undue hardships." *Okla. Tpk. Auth. v. Bruner, 259 F.3d 1236, 1242 (10th Cir. 2001).* Defendant, however, has not made any showing that it would suffer undue hardship in the absence of a Rule 54(b) entry. Because trial is set to begin on January 11, 2016 on the remaining claims, it would not be sensible to enter a Rule 54(b) certification at this time. The case will soon come to a close and the parties can appeal the resolution of all claims simultaneously.

IT IS THEREFORE ORDERED that DEFENDANT SOUTHWEST CHEESE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT (Doc. No. 122) is GRANTED with the exception of Defendant's request for entry of a final judgment. Consequently, Plaintiff's hostile work environment claim will be dismissed with regard to Mr. Borjas by partial summary judgment.

_____
SENIOR UNITED STATES DISTRICT JUDGE